# GIL GILBERT *v.* BEAVER DAM ASSOCIATION OF STRATFORD, INC., ET AL.
## (AC 23729)

Foti, Schaller and Peters, Js.

Argued June 4—officially released October 26, 2004

*Barbara M. Schellenberg*, with whom was *Jonathan S. Bowman*, for the appellant-cross appellee (plaintiff).

*Laurence V. Parnoff*, for the appellees-cross appellants (defendants).

*Opinion*

SCHALLER, J. The plaintiff, Gil Gilbert, appeals and the defendants, Beaver Dam Association of Stratford, Inc. (association), and all the owners of property that abuts the Beaver Dam Lake, cross appeal from the judgment of the trial court rendered after a trial to the court. On appeal, the plaintiff claims that the court improperly held that (1) he could not rely on the Common Interest Ownership Act, General Statutes § 47-200 et seq., (2) the association did not slander the plaintiff's title to his property and (3) the association's bylaws were properly authorized. On cross appeal, the defendants claim that the court improperly (1) precluded them from recovering attorney's fees when they had not placed the issue of attorney's fees before the court, (2) held that the statute of frauds negated their right of first refusal to purchase the plaintiff's property and (3) held that the association could not place a lien on the plaintiff's property. We affirm in part and reverse in part the judgment of the trial court.

The court found the following facts. "Beaver Dam Lake is a fifty-eight acre lake in Stratford. In the 1930s, the lake and the surrounding area, which forms the watershed of the lake, were owned by The Loch Lenidow Realty Company (Loch Lenidow). That entity sold off some lots around the lake and, in 1944, it deeded to the association the property on which an earthen

dam was located and the lake and lake bed below the dam. In this deed, the grantor reserved the right to permit six docks at specified locations on the lake from lots still owned by Loch Lenidow and obligated itself to include in the deeds of its remaining lots provisions that would prevent access by the public and reserve use of the lake to the members of the association. It further obligated itself to sell its remaining lots 'subject . . . to all reasonable rules and regulations now in effect or such as may be generally imposed from time to time upon all the owners having the use of Beaver Dam Lake, by [the association], its successors or assigns.' This deed stated that the conveyance of the lake and dam to the association were subject to '[g]rants to the use of the waters of Beaver Dam Lake contained in deeds of conveyance' set forth in various conveyances of lots.

"One of the conveyances contained in this list was the conveyance in 1933, of two tracts to Jesse E. Langsdorf. That property, which was eventually purchased by the plaintiff, passed to Martha K. Langsdorf, who sold it, with a house and outbuildings, to Frances L. Greenebaum in May, 1972. Frances Greenebaum conveyed the property to herself and her husband, Henry Greenebaum. Together, the Greenebaums conveyed the property, which was known as 3260 Huntington Road, to [the plaintiff] and [his wife] Ruth Gilbert on April 21, 1999.

"The deed by which the Greenebaums conveyed the property to the Gilberts in 1999, stated that the conveyance was subject to a number of conditions and restrictions including '[c]ovenants, agreements, rights, reservations and conditions as set forth in deeds to Jesse E. Langsdorf dated July 10, 1933, and recorded in Volume 148 at Page 308 and dated February 13, 1934, and recorded in Volume 150 at Page 91 . . . of the . . . Stratford Land Records.'

"The first deed referred to in this provision of the Gilberts' deed provided [among other things] that . . . 'said premises shall be subject to such other reasonable restrictions or limitations as the grantor or any such association may impose thereon.' The second deed whose restrictions to title were incorporated in the deed that the Greenebaums conveyed to the Gilberts includes the same provision that has been set forth above, along with other restrictions.

These deed restrictions clearly provide that the grantee took the property in question with restrictions and limitations on developing it. . . .

"In 1991, the grant from Loch Lenidow to the association was entered into the land records of Stratford, and the [then newly enacted] bylaws [dealing with membership and use of the lake] were entered in those records, indexed under the association's name both as grantor and grantee.

"Henry Greenebaum, who was deceased at the time of trial, was deeply involved in the association's effort to preserve the quality of the lake and the environment around it. He provided the association's president, Jay Esposito, with a steady stream of newspaper clippings and messages noting dangers to lakes from development in their watersheds, including the danger that the state department of environmental protection might require onerous and expensive procedures, such as draining the lake, if the association failed to be vigorous in its protection of water quality. In 1991, Henry Greenebaum wrote a history of the lake and the association that concluded with the statement '[i]t is advisable that no new construction adjacent to the lake be started without regard to the By-laws and Lake Association Rules . . . .'

"In late March or early April, 1999, in negotiations conducted without an attorney, the plaintiff entered into a contract to buy the Greenebaums' 7.8 acre property. Though the plaintiff did not enter this contract into evidence, he testified that the purchase was subject to the results of percolation tests and deep test holes to determine whether the property could be developed by subdividing and building additional residences. Though the plaintiff asserted that he did not learn that there was an association that regulated use and development of all the lakefront properties, the [trial] court [did] not find this testimony credible in light of Henry Greenebaum's long history of commitment to the association's efforts to regulate development around the lake. It seem[ed] most unlikely that Greenebaum failed to mention such regulation to the plaintiff. . . . [T]he board of managers for the association met on May 10, 1999, to discuss, among other things, the need to enact an explicit provision that all plans for subdivision, construction or development of the properties around the lake be submitted to the association for approval by three quarters of the association's members. The board noted in its minutes that landowners had in the past submitted such plans to the association on the basis of an understanding that their deeds required such submission and approval. Six of the seven members of the board of managers voted in favor of the provision. Pursuant to the requirements of its bylaws, which require that amendments receive a three-fourths majority of the total number of votes cast at any special meeting, the association held a special meeting of the members on June 11, 1999, and presented the proposed new amendments to the bylaws for ratification. No evidence was presented concerning the number of association members who cast votes at the June 11, 1999 meeting or thereafter. Of the twenty-four properties listed on the proposed amendment, nineteen signed.

* * *

"The amended bylaws provided, at article VI, § 4, that '[n]o property abutting on the water of Beaver Dam Lake, whether now owned by a non-member of the Association or formerly owned by any member of the Association, shall be subdivided, built upon or otherwise developed without the prior consent of a three-quarter (3/4) a [sic] majority vote of the members of the Association.' "

Although the plaintiff attended several functions open only to members, he did not pay the membership dues bill that was issued on July 1, 1999. "In his pleadings, [however] he asserted that he was not a member of the association and took the position that because he was not a member he was not subject to the association's bylaws and regulations. The association filed a lien against the plaintiff's property for the dues for the 1999-2000 year. The association did not seek to recover dues from the plaintiff for any year other than 1999. The association had begun using such liens to collect unpaid dues in February, 1999.

"The association also filed on the land records of each owner of property abutting Beaver Dam Lake, including the plaintiff's, the bylaws that the town clerk had indexed under the association's name in 1991. Additionally, it filed on the land records the amendment to the bylaws bearing the signatures of six of the seven members of the board of managers and the amendments to the bylaws voted on at the association meeting on June 11, 1999. The plaintiff did not authorize the recording of any of these documents."

After the pleadings were closed, the plaintiff filed a motion for partial summary judgment claiming that the association's purported right of first refusal as contained in the association's amended regulations and bylaws was invalid. The court granted the motion, find-

ing that the "regulation that purported to give the association and its various members a right of first refusal in the event that an owner of property around the lake contracted to sell it" was unenforceable for failure to satisfy the statute of frauds because the identity of the holder of the right was not sufficiently stated. After trial, the court found for the defendants on all of the plaintiff's remaining claims except his claim that the defendants improperly had placed a lien on his property. This appeal followed. Additional facts will be set forth as necessary.

## I

## APPEAL

### A

The plaintiff claims that the court improperly held that he could not rely on the Common Interest Ownership Act (act) to support his claim that the association was not valid. The plaintiff argues that Practice Book § 10-3 (a) is directory rather than mandatory and that, because the defendants were apprised of his reliance on the act at various points in the litigation, it was not necessary for the plaintiff to plead the statute.

The following additional facts are necessary to resolve the plaintiff's claim. The plaintiff did not state the act by name in his operative complaint, which, notably, was his fourth amended complaint. The plaintiff's expert and the defendants' expert discussed the applicability of the act during a hearing for a temporary injunction. The plaintiff also discussed the act in his preliminary trial brief, providing citations and analysis of its application to the case. Further, the act and its effects were also discussed during the course of trial. The court refused to consider any claim based on the act because the plaintiff had failed to comply with Practice Book § 10-3 (a).

The interpretation of the rules of practice presents a question of law, over which our review is plenary. Practice Book § 10-3 (a) provides: "When any claim made in a complaint, cross complaint, special defense, or other pleading is grounded on a statute, the statute shall be specifically identified by its number." This section is directory rather than mandatory, and its primary purpose is to ensure that a defendant is sufficiently apprised of the applicable statute during the proceedings. *Spears* v. *Garcia*, 66 Conn. App. 669, 676, 785 A.2d 1181 (2001), aff'd, 263 Conn. 22, 818 A.2d 37 (2003); *Krevis* v. *Bridgeport*, 80 Conn. App. 432, 435, 835 A.2d 123 (2003), cert. denied, 267 Conn. 914, 841 A.2d 219 (2004); see also *Egri* v. *Foisie*, 83 Conn. App. 243, 245 n.1, 848 A.2d 1266 (2004) (applying same rational outside governmental immunity context).

In *Krevis* v. *Bridgeport*, supra, 80 Conn. App. 435–36, we held that when a statute, or the concepts embodied therein, was mentioned several times prior to trial, the opposing party was sufficiently apprised of the statute. Here, although the plaintiff mentioned the act in closing arguments and in his posttrial brief, these references would not have given the defendants notice at the relevant time, i.e., when they could have responded to the allegations. The defendants, however, did receive notice from the plaintiff's preliminary trial brief, in which the plaintiff referred to the act, gave its citation from the General Statutes and argued that it provided a basis for relief. Because the defendants were sufficiently apprised of the statutory basis of the plaintiff's claim, the court improperly refused to consider the claim.

The defendants argue that because the plaintiff successfully objected to the defendants' attempt to introduce evidence regarding the act at trial, the court properly refused to consider the plaintiff's claim under the act. Implicit in this argument is the notion that the

plaintiff should not have been able to rely on the act because the defendants were precluded from arguing it at trial. Notwithstanding the fact the court did not decide this issue on that ground, the defendants' argument is premised on a inaccurate view of the events at trial. At trial, the defendants sought to elicit testimony from their expert as to the ultimate issue, i.e., whether the association was valid under the act. The plaintiff objected on the basis of relevance and argued that this testimony was improper because it invaded the province of the fact finder. The court sustained the plaintiff's objection, as well as several others in the same line, stating that this was a issue for the court to decide. Neither the court nor the plaintiff prevented the defendants from presenting testimony regarding the act, they prevented the defendants only from presenting testimony regarding the ultimate issue of whether the association was valid under the act. As such, the defendants' argument fails. The plaintiff is entitled to a hearing and resolution of his claim based on the act.

B

The plaintiff next claims that the court improperly concluded that the association did not slander the plaintiff's title to his property. The plaintiff argues that the court improperly concluded that filing the lien and recording the bylaws in his chain of title on the Stratford land records did not constitute slander of title.

Because the plaintiff seeks review of an issue of law, our review of the court's decision is plenary. *Elm Street Builders, Inc.* v. *Enterprise Park Condominium Assn., Inc.*, 63 Conn. App. 657, 669, 778 A.2d 237 (2001). "A cause of action for slander of title consists of the uttering or publication of a false statement derogatory to the plaintiff's title, with malice, causing special damages as a result of diminished value of the plaintiff's property in the eyes of third parties. The publication

must be false, and the plaintiff must have an estate or interest in the property slandered. Pecuniary damages must be shown in order to prevail on such a claim." (Internal quotation marks omitted.) Id., 669–70.

1

The plaintiff argues that the court improperly determined that the association did not slander his title to his property by filing a lien related to association dues because the court incorrectly found that the association did not act with malice and that he suffered no damages.

In its memorandum of decision, the court stated: "The recordation of the lien for unpaid dues for the year in which the association believed the plaintiff [was] a member is not authorized by any statute nor by the restrictions in the plaintiff's deed, and the association therefore had no basis for recording the lien. The association acted from a mistaken belief that it could enhance its ability to collect unpaid dues in this manner, but the plaintiff did not establish  .  .  .  that the association acted with malice. The plaintiff adduced no convincing evidence to establish that the presence of this purported lien, which required payment of dues in an amount of $1000 or less, diminished the value of the property in the eyes of third parties."

The plaintiff argues that, by filing the lien, the association clouded his title to his property, and, because his title was clouded, he has established that he was actually damaged. In essence, the plaintiff asserts that proof of a clouded title is damages per se. The plaintiff's assertion, however, does not comport with the law. Our jurisprudence indicates that a clouded title, alone, does not constitute damages per se. Rather, a plaintiff must present evidence of how the clouded title resulted in some pecuniary loss. *Elm Street Builders, Inc.* v. *Enterprise Park Condominium Assn., Inc.*, supra, 63 Conn. App. 670. "Injuries, in the sense of wrongful invasions

of a right, may be considered as of two kinds: (1) pecuniary, and (2) non-pecuniary. Pecuniary injuries are such as can be, and usually are, without difficulty estimated by a money standard. Loss of real or personal property, or of its use, loss of time, and loss of services, are examples of this class of injuries. Non-pecuniary injuries are those for the measurement of which no money standard is or can be applicable. As the books phrase it, damages in such cases are 'at large.' Bodily and mental pain and suffering are familiar examples of this class." *Broughel* v. *Southern New England Telephone Co.*, 73 Conn. 614, 621, 48 A. 751 (1901). The plaintiff did not present evidence of monetary loss caused by the clouded title. We need not address whether the court's conclusion regarding the absence of malice was correct because we conclude that the court's determination regarding the plaintiff's failure to prove pecuniary damages was correct. Because the plaintiff failed to prove such damages, he failed to prove slander of title.

2

The plaintiff also argues that the association slandered title to his property by recording its bylaws in his chain of title on the Stratford land records. The court found that, because the plaintiff's property was subject to the restrictions and regulations embodied in the association's bylaws, the recording did not constitute slander of title. Our resolution of the plaintiff's claim under the act in part I A, however, leaves unresolved the question of whether the plaintiff's property is subject to those restrictions and regulations. If, on remand, the court determines that the plaintiff's property is not subject to the bylaws, the association's recording of those bylaws in the plaintiff's chain of title could meet the elements of slander of title. Accordingly, this issue must be determined by the court only if it resolves the plaintiff's claim under the act in his favor.

## C

The plaintiff's final claim is that the court improperly determined that the association's bylaws were properly authorized under the association's internal rules. This claim may become moot, however, depending on the court's resolution of the plaintiff's claim under the act on remand. If the bylaws were not properly authorized under the relevant statutory scheme, i.e., the act, then whether they were properly authorized under the association's internal rules would be irrelevant. Only if the bylaws were properly authorized under the act will the plaintiff's challenge based on the association's alleged failure to follow its own regulations need to be addressed. We retain jurisdiction over this appeal in that eventuality.

## II

## CROSS APPEAL

## A

The defendants claim that the court improperly precluded them from recovering attorney's fees when they had not placed the issue of attorney's fees before the court. We are not persuaded.

In his pleadings, the plaintiff sought relief including, inter alia, attorney's fees. The defendants did not seek attorney's fees at trial. The court, in its memorandum of decision, simply stated that "[t]he parties shall bear their own fees."

We review the court's decision whether to award attorney's fees only to determine if it abused its broad discretion. *Schoonmaker* v. *Lawrence Brunoli, Inc.*, 265 Conn. 210, 252, 828 A.2d 64 (2003). The court did not abuse its discretion when it directed that each party should pay its own fees. The issue of the plaintiff's attorney's fees was placed before the court; the issue

of the defendants' fees *was not placed before the court.* The court's ruling that all parties should pay their own fees constituted a determination of the plaintiff's request for relief. The defendants' attempt to interpret the court's language as a denial of their attorney's fees is unavailing. Accordingly, the court did not abuse its discretion when it ordered that all parties should pay their own fees.

B

The defendants next claim that the court improperly held that the statute of frauds negated their right of first refusal to purchase the plaintiff's property. We decline to review this claim because the defendants have failed to brief this issue adequately. "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly." (Internal quotation marks omitted.) *Mattson* v. *Mattson*, 74 Conn. App. 242, 247, 811 A.2d 256 (2002). The defendants' briefing of this issue consists of no more than a recitation of some of the association bylaws and a citation to a Florida case containing a terse explanation of a right of first refusal for a condominium. The defendants' brief fails to explain how the statute of frauds applies, fails to provide the law of this jurisdiction and fails to address the issue. We decline to review this claim.

C

The defendants' final claim is that the court improperly held that the association could not place a lien on the plaintiff's property. We disagree.

In its memorandum of decision, the court found that "the plaintiff was a member of the association for the dues period that commenced on July 1, 1999. He used

the lake, which was the association's property, he attended a social event sponsored by the association and a meeting of the association, and his wife sought and obtained membership on an association committee. Though there was no formal procedure for becoming an association member, the plaintiff knew from [an association member] that an association existed and that the events he attended after meeting [that association member] were association events; and he acted in ways that signified his agreement to be a member for the 1999-2000 term. The plaintiff did not, however, agree to entry of a lien against his land . . . ."

The court went on to conclude that the lien was not authorized by statute. The court stated: "The sole authority the association claims for the lien in the amount of the 1999-2000 dues is the bylaw . . . which provides for the filing of liens to collect dues. That bylaw does not concern 'reasonable restrictions and limitations' on the use of the plaintiff's land, but only a means of collecting a debt. Restrictive covenants are not to be extended by implication. . . . The restrictive language in the plaintiff's deed does not make his title subject to a power by the association to impose such a lien, and the reference to the association's bylaws does not make the property subject to any and all bylaws the association may choose to enact, but only to those that constitute 'such other reasonable restrictions or limitations as . . . any such association may impose thereon.' 'Thereon' is a reference to the 'said premises,' and is reasonably understood in its context to apply to restrictions on use of the premises, not regulations concerning the payment of dues or other matters not related to the use of the premises." (Citation omitted.)

The court also noted that "[t]he association takes the position that because the plaintiff's grantor, Henry Greenebaum, signed the bylaw agreeing to allow a lien

for unpaid association dues, such a lien can be filed against the plaintiff. Because this bylaw was not within the scope of the restrictive covenant, Greenebaum's agreement was personal to him and did not bind the plaintiff."

The essence of the court's decision was that the association lacked the authority to record the lien. "Generally a lien can only be created with the owner's consent; that is, by a contract express or implied with the owner of the property or with some one by him duly authorized, or without his consent by the operation of some positive rule of law, as by statute." (Internal quotation marks omitted.) *Paton* v. *Robinson*, 81 Conn. 547, 554, 71 A. 730 (1909). The defendants make three arguments in support of the proposition that the association had the authority to file the lien. We address each argument in turn.

1

The defendants argue that the "subject to" provision of the plaintiff's deed provided authority for the association to file the lien. We are not persuaded.

"[T]he determination of the intent behind language in a deed, considered in the light of all the surrounding circumstances, presents a question of law on which our scope of review is plenary. . . . Thus, when faced with a question regarding the construction of language in deeds, the reviewing court does not give the customary deference to the trial court's factual inferences. . . . Intent is determined by the language of the particular conveyance in light of all the circumstances and is a question of law." (Citation omitted; internal quotation marks omitted.) *DaSilva* v. *Barone*, 83 Conn. App. 365, 370, 849 A.2d 902, cert. denied, 271 Conn. 908, 859 A.2d 560 (2004).

On the basis of our plenary review, we find persuasive the court's reasoning that the bylaw that the association

relied on to impose the lien was not within the purview of the limitation contained in the plaintiff's deed because it was not a "reasonable restriction or limitation" related to the plaintiff's premises. Indeed, we conclude that it was not a restriction or limitation at all; rather, it was a debt collection method. The restriction contained in the plaintiff's deed did not give the association the authority to place the lien on the plaintiff's property.

2

The defendants also argue that, because Henry Greenebaum, the plaintiff's predecessor in interest, signed the bylaws of the association, which contained the provision concerning liens, the plaintiff was bound by this signature, and the association had the authority to file the lien. We disagree.

Whether Henry Greenebaum's signature gave the association the authority to file the lien is a question of law over which our review is plenary. *Elm Street Builders, Inc.* v. *Enterprise Park Condominium Assn., Inc.*, supra, 63 Conn. App. 669. The defendants provide no authority for the proposition that the signature of a predecessor in interest, recorded in a document outside the relevant chain of title, binds the property owner to the obligation set forth in that document. Further, even if Henry Greenebaum's agreement to allow the lien was recorded within the plaintiff's chain of title, we note that "[i]t is well settled that a covenant personal in its nature and relating to something collateral to the land cannot be made to run with the land so as to charge the assignee by the fact that the covenantor covenanted on behalf of himself and his assigns." *Pulver* v. *Mascolo,* 155 Conn. 644, 651, 237 A.2d 97 (1967). We agree with the court that Henry Greenebaum's signature did not provide the association with the authority to file the lien.

3

The defendants' final argument is that the association had statutory authority to file the lien under General Statutes § 33-1057. Notwithstanding the verisimilitude of this argument, we decline to review it because the defendants did not present this theory to the trial court. Indeed, the court, in its memorandum of decision, specifically stated that "the association has identified *no statute that authorized such liens.*" (Emphasis added.) This court has stated that "[*t*]*he theory upon which a case is tried in the trial court cannot be changed on review, and an issue not presented to or considered by the trial court cannot be raised for the first time on review.* Moreover, an appellate court should not consider different theories or new questions if proof might have been offered to refute or overcome them had they been presented at trial. . . . For this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party." (Citations omitted; emphasis added; internal quotation marks omitted.) *Rinaldi* v. *Enfield*, 82 Conn. App. 505, 517, 844 A.2d 949 (2004). We decline to consider this argument.

On the plaintiff's appeal, the judgment is affirmed as to the determination that the lien filed on the plaintiff's property did not constitute slander of title; the judgment is reversed only as to the determination that the plaintiff failed to plead the Common Interest Ownership Act, General Statutes § 47-200 et seq. (act), and the case is remanded for further proceedings on the plaintiff's claims under the act. In the event that the association is found to be invalid under the act, and no timely appeal is taken, the judgment is reversed as to the determination that the recordings filed in the plaintiff's chain of title did not constitute slander of title and the case is remanded for further proceedings on that issue;

in the event that the association is found to be valid under the act, this court retains jurisdiction to consider the plaintiff's claim that the association's bylaws are invalid under the association's rules. On the defendants' cross appeal, the judgment is affirmed.

In this opinion the other judges concurred.