PRISCILLA DICKMAN *v.* OFFICE OF STATE
ETHICS, CITIZEN'S ETHICS
ADVISORY BOARD
(AC 33867)

Gruendel, Alvord and Mihalakos, Js.

Argued November 14, 2012—officially released February 19, 2013

*John F. Geida*, for the appellant (plaintiff).

*Brian J. O'Dowd*, deputy general counsel, with whom was *Barbara Eletha Housen*, for the appellee (defendant).

*Opinion*

PER CURIAM. The plaintiff, Priscilla Dickman, appeals from the judgment of the Superior Court dismissing her appeal from the decision of the defendant citizen's ethics advisory board (board), a division of the office of state ethics. The board determined that the plaintiff, who had been employed by the state of Connecticut as a medical technologist at the University of Connecticut Health Center (health center), violated the Code of Ethics for Public Officials (ethics code), General Statutes § 1-79 et seq. In this appeal, the plaintiff claims that the court should have concluded that (1) the board's action was invalid because two of its members

were ineligible to participate in this enforcement action, (2) the board's decision should be vacated because the board members deliberated in private, (3) the allegations of the ethics complaint needed to be proved by a standard greater than the preponderance of the evidence standard, (4) the board erroneously construed General Statutes § 1-84 (c) to find that she had violated its provisions and (5) the board's decision was not articulated sufficiently because the board failed to provide factual references to support its findings.[1] We disagree and, accordingly, affirm the judgment of the Superior Court.

The following facts and procedural history are relevant to this appeal. The plaintiff, a state employee, worked at the health center from 1978 until her retirement in the fall of 2005. In 2007, the office of state ethics filed a complaint against her that alleged she had violated the ethics code during her employment. Specifically, the complaint, which was amended in 2009, alleged that she violated § 1-84 (c) by using her position and state resources to conduct a jewelry business and to provide services as a travel agent for financial gain for herself or for a business with which she was associated.[2] *Hon. William L. Wollenberg*, judge trial referee, determined that probable cause existed to find violations of the statutory provisions identified in the amended

---

[1] In this appeal, the plaintiff additionally claims that the fine imposed by the board was excessive. That claim, however, was not raised before the Superior Court, and we decline to address it. "For this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party." (Internal quotation marks omitted.) *Gilbert* v. *Beaver Dam Assn. of Stratford, Inc.*, 85 Conn. App. 663, 680, 858 A.2d 860 (2004), cert. denied, 272 Conn. 912, 866 A.2d 1283 (2005).

[2] The complaint additionally alleged that the plaintiff violated § 1-84 (b) by accepting other employment that impaired her independence of judgment as to her official duties. The board did not find a violation of that statutory provision.

complaint, and the board then held a hearing to determine whether the alleged violations had occurred. See General Statutes § 1-82 (b).

*Hon. James G. Kenefick, Jr.,* judge trial referee, presided over the eight day hearing.[3] On January 12, 2010, the last day of the hearing, counsel gave closing arguments and the judge trial referee charged the board members on the law that they were required to apply. The board issued its finding, memorandum and order on January 15, 2010, in which it determined that the plaintiff had violated § 1-84 (c) as alleged and imposed a civil penalty totaling $15,000. The vote was unanimous.[4]

The plaintiff appealed from the board's decision to the Superior Court pursuant to General Statutes §§ 4-183 and 1-87. The Superior Court dismissed her appeal, and this appeal followed. Additional facts will be discussed where relevant to the claims on appeal.

I

The plaintiff's first claim is that the Superior Court should have determined that the board's action was invalid because two of the seven voting members, Shawn T. Wooden and G. Kenneth Bernhard, were ineligible to participate in this enforcement action.[5] Specifically, she argues that Bernhard was appointed to the board illegally because he had held elective office

---

[3] The violation of the ethics code at issue was limited to the plaintiff's conduct in 2004 and 2005. Section 1-82 (d) provides: "No complaint may be made under this section later than five years after the violation alleged in the complaint has been commited."

[4] When the hearing commenced on September 11, 2009, the board consisted of nine members. The terms of two of those members expired during the course of the eight day hearing, and, accordingly, only seven members were present for the duration of the hearing and voted on the matter. See General Statutes § 1-82 (b).

[5] General Statutes § 1-82 (b) provides in relevant part: "The board shall find no person in violation of any provision of this part . . . except upon the concurring vote of six of its members present and voting. . . ."

within three years of his appointment, which constitutes a violation of General Statutes § 1-80 (b).[6] With respect to Wooden, the plaintiff claims that he had been a delegate to the Democratic National Convention in 2008, and, therefore, his appointment to the board violated the eligibility requirements of § 1-80.

The issue of Wooden's appointment is not properly before this court. The plaintiff's operative complaint, dated October 5, 2010, is devoid of any allegation addressed to Wooden's eligibility to sit on the board. Her complaint alleged that the board's action was invalid because of Bernhard's ineligibility: "[T]he actions of the [b]oard [must] be reversed due to the illegality of Mr. Bernhard sitting on the [b]oard, and in judgment of [the plaintiff] . . . ." Despite the lack of an allegation that Wooden was ineligible for an appointment to the board, the court did refer to Wooden in its memorandum of decision.[7] The court, however, was constrained to decide the matter as the issues had been pleaded by the parties.

"Pleadings have an essential purpose in the judicial process. . . . The purpose of pleading is to apprise the court and opposing counsel of the issues to be tried

---

[6] General Statutes § 1-80 (b) provides in relevant part: "No member or employee of such board shall (1) hold or campaign for any public office; (2) *have held public office or have been a candidate for public office for a three-year period prior to appointment*; (3) hold office in any political party or political committee or be a member of any organization or association organized primarily for the purpose of influencing legislation or decisions of public agencies . . . ." (Emphasis added.)

[7] The court's memorandum of decision states in relevant part: "The plaintiff also contends that another board member who participated in the public hearing, Shawn T. Wooden, also should have been disqualified. The plaintiff's basis for disqualification is not elaborated upon, other than to state that Wooden was a delegate to the Democratic National Convention in 2008. This analysis is inadequate for further discussion by the courts. Courts 'are not required to review issues that have been improperly presented . . . through an inadequate brief.' *In re Jorden R.*, 293 Conn. 539, 555 n.14, 979 A.2d 469 (2009)."

. . . . For that reason, [i]t is imperative that the court and opposing counsel be able to rely on the statement of issues as set forth in the pleadings." (Citations omitted; internal quotation marks omitted.) *Somers* v. *Chan*, 110 Conn. App. 511, 528, 955 A.2d 667 (2008). "[A]*ny judgment should conform to the pleadings, the issues and the prayers for relief.*" (Emphasis added; internal quotation marks omitted.) *Journal Publishing Co.* v. *Hartford Courant Co.*, 261 Conn. 673, 686, 804 A.2d 823 (2002). "The [trial] court is not permitted to decide issues outside of those raised in the pleadings." (Internal quotation marks omitted.) *Gaffey* v. *Gaffey*, 91 Conn. App. 801, 804 n.1, 882 A.2d 715, cert. denied, 276 Conn. 932, 890 A.2d 572 (2005). Accordingly, the claim with respect to Wooden was not properly before the Superior Court and is not properly before this court.

With respect to Bernhard, the following additional facts are necessary for the resolution of this claim. When Bernhard was first appointed to the board on November 15, 2007, he was ineligible for that appointment because he had held public office as a state representative until January 5, 2005, which was within three years of the appointment date. See General Statutes § 1-80 (b). On September 1, 2009, the plaintiff's counsel sent a letter to the board's general counsel requesting that Bernhard be removed as a member because his appointment violated § 1-80 (b).[8] That letter was copied to Representative Lawrence F. Cafero, Jr., who initially had appointed Bernhard to the board. On September

---

[8] General counsel requested an advisory opinion on the validity of Bernhard's appointment. The board issued advisory opinion 2009-9 on September 24, 2009, in which it concluded: (1) Bernhard's original appointment to the board was void because he was not eligible for appointment at that time by virtue of § 1-80 (b) (2); (2) Bernhard's subsequent appointment on September 9, 2009, was valid; and (3) Bernhard was a de facto officer prior to his subsequent appointment, and his actions taken prior to the subsequent appointment were valid and legally binding on those affected by them.

9, 2009, which was two days before the plaintiff's hearing was scheduled to commence, Representative Cafero appointed Bernhard to the board "to commence serving on the [b]oard immediately and through September 30, 2011."[9]

The plaintiff claims that the court erroneously agreed with the board's conclusion that Bernhard's initial appointment was void and of no effect and that, therefore, Bernhard's subsequent appointment did not violate the provisions of § 1-80 that prohibit an individual from being appointed to more than one four year term.[10] We conclude that the initial appointment of Bernhard to the board was void and that the subsequent appointment was valid under § 1-80.

Bernhard's initial appointment was void because Bernhard was not eligible at that time to be a board member. See *Furtney* v. *Zoning Commission*, 159 Conn. 585, 271 A.2d 319 (1970). In *Furtney*, our Supreme Court discussed the rule detailing the circumstances under which an officer not legally qualified will be found to be an officer de facto. One of the circumstances described an individual who performed the duties of the office "under color of a known . . . appointment," which appointment was *"void because the officer was not eligible."* (Emphasis added.) Id., 596. The court noted that it had adopted that rule many years ago,

---

[9] Representative Cafero, in his letter dated September 9, 2009, wrote: "To the extent that any defect may exist with respect to his appointment, I am, today, appointing G. Kenneth Bernhard to the Citizen's Ethics Advisory Board to commence serving on the [b]oard immediately and through September 30, 2011."

[10] The plaintiff also argues that Bernhard's actions cannot be deemed valid as the acts of a de facto officer. Because we conclude that Bernhard's subsequent appointment on September 9, 2009, was valid, and the plaintiff's hearing commenced after his subsequent appointment, all of Bernhard's actions at issue in this appeal were taken as a validly appointed member of the board. The plaintiff's analysis of cases pertaining to de facto officers is, therefore, irrelevant under the circumstances of this case.

citing the decision in *State* v. *Carroll*, 38 Conn. 449, 471–72 (1871).[11]

By the time of Bernhard's subsequent appointment on September 9, 2009, more than three years had passed since his term ended as state representative, and he was, therefore, eligible to be appointed to the board. His term did not exceed the four year limit set forth in § 1-80. We therefore conclude that the subsequent appointment was a valid appointment, and there was no impediment to Bernhard's participation in the hearing and decision on the matter.

## II

The plaintiff's next claim is that the court erroneously failed to vacate the board's decision on the ground that its members deliberated in private instead of in public as she had requested. The plaintiff argues that the board's refusal to conduct its deliberations in public at the conclusion of the evidentiary portion of the hearing violated the provisions of the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., and § 1-82 (b) that require all hearings to be open to the public.

The following additional facts and procedural history are necessary for the resolution of this claim. After the board deliberated in private and issued its decision, a newspaper and its reporter filed a complaint with the freedom of information commission (commission) claiming that the board violated the open meeting provisions of the Freedom of Information Act (act). The plaintiff did not participate as a joint complainant. The commission agreed that the board violated the act and decided in favor of the newspaper and the reporter. In

---

[11] As further support for the conclusion that the initial appointment was void, see *Brown* v. *O'Connell*, 36 Conn. 432 (1870). In *Brown*, our Supreme Court discussed de facto officers and referenced a case in which a minor was treated as an officer de facto even though his appointment was void because his age rendered him ineligible to serve. Id., 450.

its final decision, the commission ordered the board not to violate the act "[h]enceforth" and to create, file and post on the board's website minutes of the deliberation portion of their January 12, 2010 meeting. The commission did not impose a civil penalty nor did it void the board's orders in the enforcement action against the plaintiff.

The plaintiff did not raise the issue of the board's deliberations in private in the operative complaint filed in her appeal to the Superior Court. Instead, in her administrative trial brief, she claimed that there were several grounds on which to reverse the board's decision, including, inter alia, that "the [b]oard committed two [f]reedom of [i]nformation violations . . . ." The heading of her argument in that brief addressed to the claim is "Violation of the Freedom of Information Act." The court's August 31, 2011 memorandum of decision referenced the freedom of information complaint and the commission's decision, the failure of the commission to void the board's orders against the plaintiff and the plaintiff's failure to participate as a joint complainant with the newspaper and the reporter. Then, citing case law, it rejected the plaintiff's argument.

The Superior Court did not address the plaintiff's claim made during oral argument before this court. The plaintiff argues that § 1-82 (b) requires that all enforcement action hearings before the board must be open and that § 1-92-31 (g) of the Regulations of Connecticut State Agencies defines a hearing to include the deliberations of the board.

We will not address the merits of the plaintiff's claim for several reasons. First, as discussed in part I of this opinion, the claim was not in the plaintiff's complaint and should not, absent an amendment to the complaint to include it, have been considered by the Superior Court in the plaintiff's administrative appeal. See *Gaffey*

v. *Gaffey*, supra, 91 Conn. App. 804 n.1. Second, the Superior Court did not rule on the claim as it has now been presented to this court. Our review of the court file and transcript reveals that the plaintiff never referenced the state regulation on which she now relies. "[A] party cannot present a case to the trial court on one theory and then seek appellate relief on a different one." (Internal quotation marks omitted.) *Ingels* v. *Saldana*, 103 Conn. App. 724, 730, 930 A.2d 774 (2007). "For this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party." (Internal quotation marks omitted.) *Gilbert* v. *Beaver Dam Assn. of Stratford, Inc.*, 85 Conn. App. 663, 680, 858 A.2d 860 (2004), cert. denied, 272 Conn. 912, 866 A.2d 1283 (2005).

### III

The plaintiff's next claim is that the board's decision should be vacated because the presiding judge trial referee erroneously instructed the board that the allegations of the ethics complaint needed to be proved by the preponderance of the evidence standard. The plaintiff argued that the allegations against her required proof beyond a reasonable doubt or, at a minimum, proof by clear and convincing evidence. The Superior Court agreed with the board that the preponderance of the evidence standard, rather than the clear and convincing evidence standard, was the appropriate standard for the board's factual findings in this enforcement action against the plaintiff.

"When a party contests the burden of proof applied by the court, the standard of review is de novo because the matter is a question of law." (Internal quotation marks omitted.) *Barber* v. *Skip Barber Racing School, LLC*, 106 Conn. App. 59, 75, 940 A.2d 878 (2008). In the present case, we conclude that the plaintiff's claim is

controlled by our Supreme Court's decision in *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 955 A.2d 15 (2008). In *Goldstar Medical Services, Inc.*, the plaintiff appealed from the trial court's dismissal of its administrative appeal from a five year suspension from the state medicaid program and an order of restitution issued by the department of social services (department). Id., 794. The appeal from the department's decision was taken pursuant to the UAPA, and one of the plaintiff's claims was that the trial court improperly concluded that the preponderance of the evidence standard, rather than the clear and convincing evidence standard, was appropriate for the factual findings of fraud. Id., 799.

Our Supreme Court first noted that the plaintiff had failed to cite any relevant statute or regulation that required the clear and convincing standard of proof to be applied in situations involving medicaid fraud at the administrative level. Id., 820–21. The court then held: "In the absence of state legislation prescribing an applicable standard of proof, we conclude that the preponderance of the evidence standard is the appropriate standard of proof in administrative proceedings, including those in which a determination of fraud may be made." Id., 821. Here, as in *Goldstar Medical Services, Inc.*, we have neither been presented with nor found any statutory authority requiring the clear and convincing standard of proof to be applied in enforcement proceedings before the board. Accordingly, the plaintiff's claim fails.

IV

The plaintiff's next claim is that the Superior Court failed to conclude that the board erroneously construed § 1-84 (c) to find that she had violated its provisions. Section 1-84 (c) provides in relevant part: "[N]o . . . state employee shall use his . . . position . . . to

obtain financial gain for himself, his spouse, child, child's spouse, parent, brother or sister or a business with which he is associated." The plaintiff argues that the statutory language does not include the plaintiff's conduct because "in order to be in violation of [§] 1-84 (c), the actions on the part of the state employee must in some way relate to the job duties, obligations and responsibilities particular to that employment."[12] In other words, the plaintiff maintains that there must be a nexus between her objectionable conduct and the duties, obligations and responsibilities that she had as a state employed microbiologist in order to find a violation of § 1-84 (c).[13]

We begin with the applicable standard of review. "[J]udicial review of an administrative agency's action is governed by the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., and the scope of that review is limited. . . . When reviewing the trial court's decision, we seek to determine whether it comports with the [UAPA]." (Internal quotation marks omitted.) *Merchant* v. *State Ethics Commission*, 53 Conn. App. 808, 812, 733 A.2d 287 (1999). "[R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither this court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on

---

[12] It is uncontested that the plaintiff was a state employee at the time of the alleged misconduct. She claims, however, that even assuming that the board's factual findings are supported by the record, the statute does not apply to her conduct.

[13] To clarify her position, the plaintiff gave the following example of conduct that she believed would constitute a violation of § 1-84 (c). According to the plaintiff, if she, as a microbiologist, had furnished a laboratory report prepared on state time to a physician for private compensation, she then would have violated that statutory provision.

the weight of the evidence or questions of fact." (Internal quotation marks omitted.) *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, supra, 288 Conn. 833. "Conclusions of law reached by the administrative agency must stand if . . . they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Internal quotation marks omitted.) *Merchant* v. *State Ethics Commission*, supra, 812.

The plaintiff's claim presents a matter of statutory construction, which.is a question of law. See *Cornelius* v. *Rosario*, 138 Conn. App. 1, 8, 51 A.3d 1144, cert. denied, 307 Conn. 934, 56 A.3d 713 (2012). "Cases that present pure questions of law . . . traditionally invoke a broader standard of review than ordinarily is involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . We have determined, therefore, that we will defer to an agency's interpretation of a statutory term only when that interpretation of the statute previously has been subjected to judicial scrutiny or to a governmental agency's time-tested interpretation and is reasonable." (Citation omitted.) *Board of Selectmen* v. *Freedom of Information Commission*, 294 Conn. 438, 446, 984 A.2d 748 (2010).

As noted by the Superior Court in its August 31, 2011 memorandum of decision, "[a]t least five times between 1998 and 2005, the board's predecessor[14] ruled that obtaining financial gain through the use of state work time or facilities (e-mail, computer website and storage,

---

[14] The office of state ethics is the successor agency to the state ethics commission. *Council 4, AFSCME, AFL-CIO* v. *State Ethics Commission*, 304 Conn. 672, 672 n.1, 41 A.3d 656 (2012).

telephone) while holding a position of a state employee violated § 1-84 (c)." At oral argument before this court, the plaintiff did not dispute the Superior Court's finding that the statutory provision at issue previously had been interpreted administratively in the manner claimed by the board. Instead, she argues that there is no appellate case law construing § 1-84 (c), and, therefore, no deference should be accorded the board's interpretation. The plaintiff, however, misinterprets the holding in *Board of Selectmen* v. *Freedom of Information Commission*, supra, 294 Conn. 446. We will defer to an agency's interpretation when "that interpretation of the statute previously has been subjected to judicial scrutiny *or to a governmental agency's time-tested interpretation* and is reasonable." (Emphasis added.) Id. The court found that the board's interpretation was time-tested, and we do not disagree with that determination.

The next inquiry is whether the board's interpretation was reasonable. The Superior Court found the board's interpretation to be reasonable, and we conclude that the court's finding is supported by the statutory language of § 1-84 (c), its legislative history and our case law.[15] The statute prohibits the *use* of the state employee's position to obtain financial gain. Here, the board found that the plaintiff used state computers and telephones, as well as the time for which she was paid by the state to perform her duties as a microbiologist, to conduct a jewelry business and to provide services as a travel agent. The plaintiff's access to the state equipment was made possible because of her position as a

---

[15] The Superior Court additionally cited an Oregon Supreme Court decision as being supportive of the board's interpretation. In *Davidson* v. *Oregon Government Ethics Commission*, 300 Or. 415, 712 P.2d 87 (1985), the state-employed plaintiff was found to have obtained an automobile for himself at a discounted price as an "add-on" to a state fleet purchase order. The court stated: "The broad policy of the ethics laws is to ensure that government employees do not gain personal financial advantage through their access to the assets and other attributes of government." Id., 422.

state employee at the health center. Even if the statutory language could be deemed ambiguous, the legislative history supports the board's interpretation. Representative Patricia T. Hendel stated that the intent of the proposed bill was "to pass a stronger code of ethics bill this year. I think it's important that we help to increase public trust and improve the total image of our state government . . . . The strength of this bill lies in the oversight powers that will rest with a new ethics commission." 20 H.R. Proc., Pt. 15, 1977 Sess., pp. 6417–18.

Although there is no Connecticut appellate case law directly on point, this court's decision in *Merchant* v. *State Ethics Commission*, supra, 53 Conn. App. 808, is supportive of the board's interpretation. In *Merchant*, the plaintiff, employed by the state as consumer counsel for the office of consumer counsel, was found by the state ethics commission (commission) to have violated § 1-84 (c) by improperly certifying his state attendance records to include hours when he was out of state at golf tournaments. Id., 810–12. In challenging, inter alia, the determination of the Superior Court that the commission had jurisdiction to hear his matter, this court stated that "[t]he plaintiff's alleged activity [of claiming work time when out of the state on personal business] clearly falls within the jurisdiction of the commission under the ethics code." Id., 813. For the foregoing reasons, we conclude that the Superior Court did not improperly conclude that the board's interpretation was time-tested and reasonable.

V

The plaintiff's final claim is that the Superior Court improperly failed to conclude that the board's decision was not articulated sufficiently because it did not provide factual references to support its findings. Specifically, the plaintiff argues that the board's decision

"consist[ed] of broadly worded statements" and that "[t]he lack of facts makes it impossible for a reviewing court to determine whether the decision was arbitrary or based on a reasonable interpretation of the evidence."

The board set forth the following factual findings in reaching its determination that the plaintiff had violated § 1-84 (c): (1) by virtue of her employment at the health center, the plaintiff had access to state resources, including computers, printers, the e-mail system, telephones and Internet websites; (2) the plaintiff owned and operated a private jewelry business; (3) the plaintiff's jewelry business was operated for profit; (4) on multiple occasions, the plaintiff used her access to state resources in furtherance of her jewelry business; (5) specifically, the plaintiff used state computers, printers, telephones, Internet access and the e-mail system in furtherance of her private jewelry business; (6) the plaintiff accessed and used the health center's e-mail system from remote locations to conduct her private jewelry business; (7) the jewelry business did not own its own computer in 2004 and 2005 and relied on the state's computers to operate the business; (8) the plaintiff was a registered travel consultant and agent in 2004 and 2005; (9) the plaintiff was an owner of the travel consulting business and that business was conducted for profit; (10) during state time, the plaintiff used the health center's telephones and e-mail system in furtherance of her travel consulting business; (11) the previously described conduct constituted a use of the plaintiff's position within the meaning of § 1-84 (c); (12) the plaintiff engaged in such conduct to obtain financial gain and such conduct resulted in financial gain for the plaintiff; (13) the plaintiff obtained financial gain from a variety of sources, including, inter alia, revenues from her businesses, commissions, cash sources, tax benefits and the avoidance of costs that she would have incurred

had she not availed herself of the state resources in furtherance of her private businesses; (14) the plaintiff continued to engage in such conduct after having been advised that such conduct was prohibited; and (15) the plaintiff knowingly acted in her own financial interest and received financial advantage by engaging in the acts and course of conduct as described.

The plaintiff claims that the factual findings set forth by the board are insufficient as a matter of law to support its determination that she violated § 1-84 (c). Pursuant to § 1-82 (b), the board was required to "publish its finding and a memorandum of the reasons therefor" no later than fifteen days from the conclusion of the public hearing. In this case, as previously noted, the hearing was conducted over a period of eight days, commencing September 11, 2009, and concluding on January 12, 2010. The statutes contain no further direction as to the contents of the board's required memorandum. There are no requirements that testimony or exhibits be referenced, or that references to transcripts be provided.

The plaintiff cites no relevant statutes or case law that require a more detailed decision than the board's "finding, memorandum and order" issued on January 16, 2010. It is the function of the reviewing court to search the entire record to determine whether there is substantial evidence to support a board's determination that there has been a violation of the ethics code. "In accordance with the [UAPA], we review an administrative agency's decision for abuse of discretion to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable." (Internal quotation marks omitted.) *Connecticut Motor Cars* v. *Commissioner of Motor Vehicles*, 300 Conn. 617, 621–22, 15 A.3d 1063 (2011). "The [UAPA] . . . prescribes that review of an

administrative adjudicative decision should be on the *whole* record. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . If, therefore, the specific evidence cited in support of an administrative officer's ultimate factual finding is inadequate to support that ultimate factual conclusion, a reviewing court should search the record of the entire proceedings to determine whether it does in fact contain substantial evidence from which the ultimate factual finding could reasonably be inferred." (Emphasis in original; internal quotation marks omitted.) *Murphy* v. *Commissioner of Motor Vehicles*, 60 Conn. App. 526, 530–31, 760 A.2d 510 (2000). Accordingly, if the administrative record provides substantial evidence on which the board reasonably could have based its finding that the plaintiff used her position as a state employee to obtain financial gain for herself or for her businesses, the board's decision must be upheld. See id., 531.

The Superior Court, following applicable case law, concluded: "There is clearly substantial evidence that the plaintiff was making use of state resources for her private financial gain. There were e-mails in the record relating to gem orders from her supplier, confirming jewelry orders and pickups, transmittal of photos of jewelry to clients, and confirming payment by clients. . . . Similarly there are e-mails relating to travel packages and quotes for clients. . . . The plaintiff also accessed state e-mail when out of the office. . . . Finally, she also made use of state telephones for jewelry and travel business." (Citations omitted.) Further, "[t]he record shows that there was a link between the plaintiff's use of state facilities and her financial gain in both her jewelry business and her travel business." Our own independent review of the record supports the Superior Court's determination that the board's findings and conclusions were based on substantial evidence.

For these reasons, we conclude that the Superior Court properly determined that the board did not act illegally, arbitrarily, unreasonably or in abuse of its discretion when it found that the plaintiff violated § 1-84 (c) of the state ethics code, and, therefore, it properly dismissed the plaintiff's administrative appeal.

The judgment is affirmed.