******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

BRIDGEPORT DENTAL, LLC *v.* COMMISSIONER
OF SOCIAL SERVICES
(AC 37328)

Beach, Sheldon and Harper, Js.

*Argued December 7, 2015—officially released May 24, 2016*

(Appeal from Superior Court, judicial district of New
Britain, Schuman, J.)

*Jonathan J. Klein*, for the appellant (plaintiff).

*Robert B. Teitelman*, assistant attorney general, with
whom, on the brief, was *George Jepsen*, attorney general, for the appellee (defendant).

*Jeffrey R. Babbin* filed a brief for the Connecticut
State Dental Association et al. as amici curiae.

*Opinion*

BEACH, J. The Commissioner of Social Services is authorized to pay providers of dental services for services rendered to beneficiaries of various assistance programs; the payments are subject to audits. See General Statutes § 17b-99 (d). This case involves the process by which a provider may contest the results of the audit, and the scope of review by the Superior Court.

The plaintiff, Bridgeport Dental, LLC, appeals from the trial court's dismissal of its appeal from the final decision of the defendant, the Commissioner of Social Services. The defendant's final decision substantially upheld the conclusions of an audit that had determined that the plaintiff, a provider of dental services, had received $106,851 in overpayments from the defendant. On appeal, the plaintiff claims that the court (1) improperly found that the record contained substantial evidence to support the defendant's finding of overpayments, (2) committed plain error in determining that the plaintiff's failure to include certain claims in its statement of aggrievement at the administrative level barred the plaintiff from raising the claims at trial, and (3) erred in determining that "the manner in which extrapolation projection methodology was applied by the [auditor] to calculate the amount of the overpayment . . . was supported by substantial evidence . . . ."[1] We affirm the judgment of the trial court.

In order to place the claims in context, it is useful to summarize the statutory process. Pursuant to General Statutes (Rev. to 2013) § 17b-99 (d) (1),[2] the defendant or his delegate, with some exceptions not relevant here, must notify the provider prior to conducting an audit. Findings may be based on extrapolation from samples if, inter alia, the value of claims subject to the audit exceeds $150,000 on an annual basis. General Statutes (Rev. to 2013) § 17b-99 (d) (3). If the auditor discovers discrepancies and notifies the provider, the provider is allowed thirty days in which to provide documentation to rebut the discrepancies. General Statutes (Rev. to 2013) § 17b-99 (d) (4). The auditor is to issue a preliminary written report and provide a copy of the report to the provider not later than sixty days after the conclusion of the audit. General Statutes (Rev. to 2013) § 17b-99 (d) (5). An "exit conference" shall then be held.[3] General Statutes (Rev. to 2013) § 17b-99 (d) (6). Following the exit conference, the defendant shall produce a final written report, which, with some exceptions, is to be given to the provider within sixty days of the exit conference. General Statutes (Rev. to 2013) § 17b-99 (d) (7).

Any provider aggrieved by a decision in the final written report may request a review "of all items of aggrievement" before an impartial designee of the defendant (review official). The request for review shall

contain a "detailed written description of each specific item of aggrievement . . . ." General Statutes (Rev. to 2013) § 17b-99 (d) (8). The review official is then to issue a "final decision." General Statutes (Rev. to 2013) § 17b-99 (d) (8). Pursuant to § 17b-99 (d) (9) the provider may appeal from the final decision to the Superior Court "in accordance with the provisions of Chapter 54," the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq.[4]

Within this framework, the court recounted the following facts, which are relevant to our resolution of the plaintiff's claims. "The plaintiff is a dental practice providing eligible patients services that the Department of Social Services (department) paid for pursuant to the Medicaid program.[5] On March 12, 2013, the department issued a final report on an audit it conducted. The report concluded that, for the period from July 1, 2008 through June 30, 2010, the plaintiff received $873,744 in Medicaid payments, of which $106,851 constituted overpayments. The department proposed that it deduct the $106,851 from future payments to the plaintiff. . . ."[6]

"[James Caserta, a dentist employed by the plaintiff, submitted, on behalf of the plaintiff] a statement of aggrievement seeking review of the audit. . . . No hearing took place,[7] but the record contains numerous letters and e-mails that the plaintiff subsequently sent to or received from state officials concerning the audit. . . . During this time period, the [defendant] designated an attorney from [the department] to conduct a review of the audit. On March 21, 2014, the review official issued a nine page final decision with exhibits. . . . In the . . . ['Audit Review Final Decision'], the review official noted that the department agreed to approximately $1700 of additional payments to the plaintiff. . . . In all other respects, the review official concluded that he would order no changes to the final audit." (Citations omitted; footnotes added.)

The plaintiff appealed to the Superior Court from the Audit Review Final Decision on May 5, 2014, pursuant to § 17b-99 (d) (9).[8] After oral argument was heard by the court, it determined, in a written memorandum of decision, that the review official's conclusions were supported by substantial evidence and that the plaintiff had not established that the department acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. The court declined to review two of the plaintiff's claims because it had not raised the claims in its statement of aggrievement to the review official. This appeal followed.

We agree with the parties that principles underlying the substantial evidence standard inform our review. General Statutes § 4-183 (j) provides in relevant part that a reviewing court "shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because

the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion . . . ."

"The substantial evidence rule[9] imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . and . . . provide[s] a more restrictive standard of review than standards embodying review of weight of the evidence or clearly erroneous action. . . . [I]t is something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence. . . . [A]s to questions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . Conclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts." (Footnote added; internal quotation marks omitted.) *Eagen* v. *Commission on Human Rights & Opportunities*, 135 Conn. App. 563, 572–73, 42 A.3d 478 (2012).

The substantial evidence standard requires that the plaintiff "do more than simply show that another decision maker, such as the [Superior Court], might have reached a different conclusion. Rather than asking the reviewing court to retry the case de novo . . . the plaintiff must establish that substantial evidence does not exist in the record as a whole to support the agency's decision." (Citation omitted.) *Samperi* v. *Inland Wetlands Agency*, 226 Conn. 579, 587–88, 628 A.2d 1286 (1993). With this limitation upon our review, we will consider each of the plaintiff's claims in turn.

I

The plaintiff first claims that the court improperly found that the record contained substantial evidence in support of the review official's conclusions. The plaintiff argues that the record, as presented to the court, contained determinations of fact, but it did not include evidence itself, such as treatment or billing records. As such, the plaintiff reasons, the court had no evidence to examine in the course of concluding whether the substantial evidence rule was satisfied. We disagree.

We begin by stressing the plaintiff's burden when appealing an agency decision to the Superior Court.

Our Supreme Court has stated that a plaintiff who challenges an agency decision has the "heavy burden of demonstrating that the department's factual conclusion lacks substantial support on the whole record." *Office of Consumer Counsel* v. *Dept. of Public Utility Control*, 246 Conn. 18, 36–37, 716 A.2d 78 (1998); see *New England Cable Television Assn., Inc.* v. *Dept. of Public Utility Control*, 247 Conn. 95, 118, 717 A.2d 1276 (1998). When the audit in this case occurred, § 17b-99 (d) (8), the portion of the statute that governed the review process for Medicaid audits, prescribed in relevant part that "[a]ny provider aggrieved by a decision contained in a final written report . . . may . . . request, in writing, a review on all items of aggrievement. Such request shall contain a detailed written description of each specific item of aggrievement. . . ."

In the statement of aggrievement, the plaintiff challenged four audit findings[10] pertaining to (1) inadequate documentation, (2) incorrect procedure codes, (3) the enrollment status of performing providers, and (4) third party coverage. The review official adjusted several disallowances such that the plaintiff obtained some relief, but ultimately concluded that the information provided in the statement of aggrievement and other materials submitted by the plaintiff did not require any significant change to the final audit report. The Superior Court's review was limited to those issues included in the statement of aggrievement, and to determining whether the review official's conclusions passed legal muster.

The first challenged audit finding—that there was inadequate documentation to support certain Medicaid claims in some of the samples which were randomly picked for review—involved X-rays that the auditor had concluded were either missing from patient records or not of sufficient diagnostic quality to warrant reimbursement. In the statement of aggrievement, the plaintiff disagreed that the X-rays for the samples listed by the auditor were missing or of poor quality; it insisted that adequate X-rays had in fact been in the patient charts. In a letter sent to the review official, in an effort to counter the department's positions, the plaintiff included patient X-rays for "Sample 55." In this same letter, the plaintiff attributed the auditor's conclusion that certain X-rays were missing to the department's "mismanagement and chaos." The plaintiff also provided two one-page documents that confirmed that the department had "picked up" X-rays from the plaintiff during the audit, but the documents did not specify which X-rays had been provided or whether the included X-rays rebutted the auditor's finding that some X-rays were missing from sample charts.

The review official concluded that, with the exception of Sample 55, the samples that the plaintiff had challenged in the statement of aggrievement did not contain X-rays. The review official revised the adjust-

ment amount for Sample 55 because the plaintiff had provided those X-rays in subsequent correspondence. The review official also consulted with Steven Lepowsky, a dentist and Senior Associate Dean at the University of Connecticut Health Center School of Dental Medicine, who concluded that one of the X-rays provided was not of diagnostic quality; as a result of Lepowsky's conclusion, the review official upheld the department's disallowance for that particular sample.

The review official also considered the second item listed in the statement of aggrievement in which the plaintiff disputed disallowances resulting from the use of incorrect procedure codes. According to sample patient charts, hygienists had placed dentists' initials in the charts to indicate that a particular procedure had been performed. Section 17b-262-526 (7) of the Regulations of Connecticut State Agencies provides that for each Medicaid eligible client, a Medicaid provider must maintain a record that contains "pertinent treatment notes signed by the provider . . . ." When submitting claims for payment for the procedures, the plaintiff used procedure codes that indicated a dentist had provided the services, yet the charts did not contain the treatment notes signed by the dentist, as required by § 17b-262-526 (7). In the statement of aggrievement, the plaintiff did not claim that this conclusion was incorrect, but merely argued that a dentist *had* seen those sample patients, and that the requirement that dentists sign treatment notes is not "known by dentists," nor was it "promulgated by the American Dental Association [or] the Connecticut State Dental Association."

The review official concluded that "to support [this] billing code . . . a dentist is required to enter pertinent treatment notes in the patient's chart and is required to sign the treatment notes." Because the plaintiff did not dispute the audit's finding that the treatment notes were not signed by a provider, the review official concluded that no adjustment to those findings was warranted.

The plaintiff challenged the audit's finding that incorrect procedure codes had been used in samples where periapical films had been taken on the same day as bitewings, panoramic, or lateral jaw films. The review official stated that, according to the Connecticut Medical Assistance Program provider manual, the department does not reimburse providers for periapical films taken on the same dates as the other, aforementioned films. The plaintiff did not claim or provide evidence to show that those films had not been taken on the same day, but rather stressed that the additional X-rays had been necessary. The review official upheld this adjustment.

As to the third finding that the plaintiff challenged regarding the auditor's conclusion that a performing provider was not enrolled properly with the depart-

ment, the review official determined that one of the dentists within the practice should not have billed Medicaid for services that he had performed because, at the time the claim was submitted, he had not been enrolled as a Medicaid provider. Until he had received notification that he had been enrolled as a Medicaid provider, the claims that this dentist had filed were ineligible for Medicaid reimbursement. A copy of the letter notifying the dentist that he had been successfully enrolled after provision of the services in issue was included in the report to the plaintiff. The review official declined to make any adjustment on this challenged ground.

The fourth challenged finding—that the plaintiff had failed to post private insurance payments when billing Medicaid for services rendered—was, according to the plaintiff, the result of confusion over how to handle third party payees. The review official responded: "Confusion regarding how to handle third party coverage does not excuse non-compliance with the rules concerning third party coverage. The auditor's findings will not be disturbed."

At the Superior Court hearing, the plaintiff did not point to any part of the record to demonstrate that the review official's conclusions regarding the four items listed in the statement of aggrievement were unsubstantiated by the record that he had reviewed. On appeal to this court, the plaintiff similarly does not argue specifically in what ways the contested findings were not supported by substantial evidence but, rather, generally posits that "the record contains no evidence on the basis of which the trial court could reach a conclusion that the defendant had satisfied the substantial evidence rule." It further argues that the record is "bereft of evidence, direct or circumstantial" and that the Audit Review Final Decision contains only inferences and conclusions drawn by the review official, not actual evidence. This argument misses the point: the plaintiff had the opportunity to provide the documentation that, it claimed, disproved the audit's disallowances when the plaintiff submitted its statement of aggrievement. The statement of aggrievement contained assertions that the findings were erroneous, but, with several exceptions that resulted in adjustments, did not provide any evidence of mistake committed by the department. For example, the plaintiff wrote, "There are many references to 'no documentation' as a justification for denying payment, and ALL the work performed was disallowed based upon this erroneous assumption. In NO instance was there ever 'no documentation.' ALL work performed on EVERY patient was dated and entered into the patient's record." Yet, the plaintiff provided X-rays only for Sample 55 and did not, at any point in these proceedings, submit the X-rays that the auditor had found to be missing. If, as the plaintiff claims, its requests for payment which were disallowed

by the audit had indeed been adequately supported by documentation, it had the opportunity to present the documentation at several stages.

As to the other challenged findings—the use of incorrect procedure codes, an unenrolled provider, and the failure to seek reimbursement from private insurance companies—the plaintiff's statement of aggrievement contained no documentation showing that the auditor had erred, and, rather, suggested that the plaintiff's dentists had been confused by the regulations and requirements of participating in the Medicaid program. Without evidence of mistake by the department, the review official did not alter the results of the final audit report.[11]

The plaintiff did not satisfy its burden of showing that the review official's decision—which was, in part, based upon the lack of proof that certain procedures were performed by an enrolled provider or performed at all—was erroneous. Unlike the traditional review of a contested case, here the basis of the administrative action was the audit. The audit was derived from information peculiarly within the plaintiff's knowledge. At several points the plaintiff had the opportunity to contest conclusions stated in the audit; to a limited degree, it was successful. There was no obligation on the part of the defendant to justify in the review process those portions which were not contested. It, and the review official, did have the obligation to consider the documentation submitted by the plaintiff fairly. We find nothing in the record to suggest that the review official acted arbitrarily or abused his discretion in his issuance of the Audit Review Final Decision. The court properly concluded that the review official's conclusions were not erroneous.

## II

The plaintiff next claims that the court committed plain error by declining to review two issues that the plaintiff had not raised before the defendant in the review process.[12] We disagree.

It is well established that a court "will not set aside an agency's determination upon a ground not theretofore fairly presented for its consideration . . . ." (Internal quotation marks omitted.) *Pet* v. *Dept. of Health Services*, 228 Conn. 651, 674, 638 A.2d 6 (1994). Nevertheless, "[t]he well-recognized limitations on judicial review do not require courts to abstain entirely from entertaining questions that might have been, but were not, raised before the [agency]. Reviewing courts retain considerable latitude, in ordinary legal proceedings, to consider matters not raised in the trial court. . . . The standard for review of administrative proceedings similarly must allow for judicial scrutiny of claims such as constitutional error . . . jurisdictional error . . . or error in the construction of the administrative agency's

authorizing statute." (Internal quotation marks omitted.) *Ogden* v. *Zoning Board of Appeals*, 157 Conn. App. 656, 665–66, 117 A.3d 986, cert. denied, 319 Conn. 927, 125 A.3d 202 (2015). Additionally, "the leniency traditionally afforded to inexperienced pro se parties may justify belated consideration of claims not fully explored in earlier proceedings." *Burnham* v. *Administrator*, 184 Conn. 317, 322–23, 439 A.2d 1008 (1981).

The plain error doctrine "is an extraordinary remedy used by appellate courts to rectify errors committed at trial that, although unpreserved, are of such monumental proportion that they threaten to erode our system of justice and work a serious and manifest injustice on the aggrieved party. [T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment, for reasons of policy. . . . In addition, the plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . Plain error is a doctrine that should be invoked sparingly." *Reville* v. *Reville*, 312 Conn. 428, 467–68, 93 A.3d 1076 (2014).

We do not find plain error in the circumstances of this case. In its appeal to the Superior Court, the plaintiff claimed, for the first time, that (1) the financial audit was improper because the department had not enacted procedural regulations for audits despite a statutory mandate to do so,[13] and (2) some audit adjustments should have been classified as clerical errors and disregarded pursuant to § 17b-99 (d) (2).[14] The court concluded that "[t]he plaintiff's failure to raise this matter before the department is particularly significant because the absence of regulations is clearly something that the department had the ability to rectify during the pendency of the audit proceedings. Although the department's continued noncompliance with the 2010 statutory mandate to enact regulations concerning the audit process is of significant concern to the court, the court will not reverse the department's decision on a ground that the plaintiff never gave the department an opportunity to address." The court reached a similar conclusion with respect to the claim regarding clerical errors. The plaintiff did not show that the court's decision not to review the two claims—on the basis of the record and the arguments presented at the hearing—was an extraordinary event amounting to plain error.

First, the plaintiff's claim that the department failed to enact regulations[15] does not challenge the review official's findings. The purpose of the appeal to the trial court was to seek judicial review of the review official's

decision. Because the review official did not have an opportunity to respond to this claim, the court correctly decided not to review the review official's conclusions on this matter. There was no legislative directive not to conduct audits until regulations were enacted, and we have no way of knowing what regulations hypothetically may have been enacted.

Second, the plaintiff's argument that it was plain error for the court not to address its claim that certain financial disallowances were based on clerical errors, similarly, does not challenge the review official's findings. In its brief, the plaintiff argues the substance of this particular claim, but fails to persuade us that the court committed plain error by declining to review an issue that had not been raised to the review official. The plaintiff adds that "[w]ith the glaring absence of anything but conclusory statements in the record, and with no testimonial or documentary evidence which can be reviewed, the substantial evidence rule is not satisfied . . . ." The review official did not examine the issue of clerical errors in the plaintiff's records, therefore, the trial court did not, and indeed could not, find that the review official's conclusions were supported by substantial evidence as to this claim.[16]

### III

The plaintiff claims that the court "erred in determining that the manner in which extrapolation projection methodology was applied by the [auditor] to calculate the amount of the overpayment assessed against the plaintiff was supported by substantial evidence in the record." We disagree.

In the statement of aggrievement, the plaintiff challenged the auditor's use of extrapolation methodology, stating in relevant part: "To make matters worse, the principles of extrapolation are being used during this review process. The principles of extrapolation, while a fairly valid mathematical concept in predicting trends in certain situations, series of numbers, etc., is not applicable to the actual rendering of care in a dental practice as there are simply too many variables to consider. Extrapolation works until it doesn't work. . . . These . . . principles of extrapolation that are being applied in such a ruthless way to deny me the fruits of my labor and impugning my integrity by utilizing irrational and unfounded assumptions can be utilized to prove exactly the opposite. . . . To attempt to apply the principles of extrapolation to the rendering of patient care is to go down a slippery slope." The plaintiff also pointed out specific examples[17] of the ways in which the use of extrapolation produced "ludicrous, absurd, and patently false" results. In a follow-up letter to the review official, Caserta added: "My purpose here is not to debate the legality of the use of extrapolation to recoup public funds as [Public Acts 2005, No. 05-195] cited above clearly authorizes it. On the contrary, it is to

solely point out the abuses of the [department] and the role that it, the [department], is playing in defrauding the dentists in Connecticut."

The Audit Review Final Decision concluded: "The provider attacks the [d]epartment's use of extrapolation . . . . Although the Connecticut General Assembly has limited the [d]epartment's ability to use extrapolation in audits, see Conn. Gen. Stat. § 17b-99 (d) (3), the General Assembly has not excluded audits of dental providers (or any other provider groups) from extrapolation. I have considered the [plaintiff's] other arguments regarding the [d]epartment's use of extrapolation and find them to be without merit."

In its memorandum of decision, the court examined the method of extrapolation described by the original audit document.[18] It found that the methodology employed was "almost exactly the same method used and approved by our Supreme Court in the Medicaid context in *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 813–18, 955 A.2d 15 (2008)."[19] Consequently, the court concluded that the plaintiff had not established that the department acted unreasonably, arbitrarily, illegally, or in abuse of its discretion.

The challenge to the use of extrapolation presented in the statement of aggrievement was legal, rather than factual, in nature. At that stage of the proceedings, the plaintiff had not questioned whether extrapolation was properly applied in the specific circumstances of the department's audit but appeared to challenge the use of extrapolation as a general principle. Although, in its follow-up letter to the review official, the plaintiff claimed that it did not dispute the legality of extrapolation, it did claim that by alleging that the department was "defrauding the dentists in Connecticut," presumably by using extrapolation in its audits. The question before the court, then, was not whether the specific mechanics of extrapolation were used properly in this case, but whether the department was correct in its decision to use the methodology of extrapolation at all.

"[F]or conclusions of law, [t]he court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of its discretion. . . . [Thus] [c]onclusions of law reached by the administrative agency must stand if the court determines that they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is . . . involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when a state agency's determination of a question of law has not previously been subject to judicial scrutiny . . .

the agency is not entitled to special deference." (Internal quotation marks omitted.) *Commission on Human Rights & Opportunities* v. *Echo Hose Ambulance*, 156 Conn. App. 239, 245, 113 A.3d 463, cert. granted on other grounds, 317 Conn. 911, 116 A.3d 309 (2015).

The use of extrapolation in general to determine overpayment is authorized both by statute and by case law. General Statutes (Rev. to 2013) § 17b-99 (d) (3) provides in relevant part that a finding of overpayment to a Medicaid provider "shall not be based upon extrapolated projections unless . . . (C) the value of the claims in aggregate exceeds one hundred fifty thousand dollars on an annual basis." The plaintiff's Medicaid claims in this case amounted to $873,744 over two years, exceeding the statutory minimum necessary for extrapolation to be appropriate. The auditor, then, was authorized by the legislature to use extrapolation in its audit.

Our Supreme Court addressed the use of extrapolation in *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, supra, 288 Conn. 813–19. In that case, the department used the following procedure: "Errors found in the sample were extrapolated to the universe using a mean per unit estimate. The amount of error was calculated for each sample claim. The average error per sample was then calculated. The average error was multiplied by the total number of paid claims to determine the extrapolated error amount." (Internal quotation marks omitted.) Id., 814. Our Supreme Court upheld the use of the extrapolation methodology, concluding that "[f]ederal regulatory authority . . . requires states to ensure that [M]edicaid funds are allocated appropriately and simultaneously recognizes the impracticality of discrete assessment of claims in an effort to recoup overpayments where a multitude of claims is involved. Given the nature of the [M]edicaid program as a state and federal cooperative regime, it would be incongruous to interpret our statutory scheme to disallow a practice that is recognized at the federal level as the only feasible method of recouping funds that improperly have been procured. . . . Accordingly, we conclude that the trial court properly concluded that the department's use of the extrapolation method was appropriate." (Citation omitted.) Id., 817–18.

On appeal to this court, the plaintiff claims a lack of evidence about the manner in which the extrapolation methodology was applied in the audit, reasoning that the court erred in finding that substantial evidence supported its use. The court, however, made no such finding. The issue that had been raised in the plaintiff's statement of aggrievement was a general attack on the use of extrapolation with specific examples as to why any extrapolation, in the plaintiff's view, produced odd results in its audit. The review official responded to that issue by emphasizing the legal propriety of the use of extrapolation. Thereafter, the claim presented to the

court essentially was that the plaintiff had not been provided with a record of the precise statistical methodology which was used by the auditor. Because this was not the issue raised before the review official, the court responded to the legal attack on the use of extrapolation that had been raised in the statement of aggrievement and to which the review official responded, rather than the historical, factual argument presented, for the first time, to the Superior Court in the plaintiff's brief. Once again, the plaintiff mistakenly seems to assume that the department was obligated to voluntarily provide the details of its statistical analysis, where the details had not been attacked by the plaintiff.

The court, in responding to a legal issue, correctly applied the standard of review when it concluded that, "[a]lthough the plaintiff suggests that the department could have used other types of extrapolation methods, the plaintiff has not established, in view of the statutory and case law authority, that the department's extrapolation methods in this case reveal the department to have acted unreasonably, arbitrarily, illegally or in abuse of its discretion." The court appropriately reviewed this claim for unreasonableness, arbitrariness, illegality, and abuse of discretion and properly found, in the circumstances of this case, that the plaintiff has not demonstrated any injustice in the use of extrapolation by the auditor.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The plaintiff also claims that the court erred in determining that it bore the burden of production and persuasion at the administrative level, but that this conclusion did not affect the court's ultimate finding that the agency decision was supported by substantial evidence. Therefore, we decline to address this specific claim as a separate issue. We address the issue of the plaintiff's burden at the trial court level within the context of the first claim. See part I of this opinion.

[2] We refer in this opinion to General Statutes (Rev. to 2013) § 17b-99 (d) unless otherwise indicated, which is the revision of the statute as it existed at the time of the events in issue, prior to the enactment of No. 14-162 of the 2014 Public Acts. Also, there are in the statute provisions relevant to fraudulent billings. Because fraud is not an issue in the present case, we do not discuss provisions relating to fraudulent billings.

[3] Number 14-162, § 1, of the 2014 Public Acts, effective after the events in question in the present case, expressly provides for the opportunity of the provider to present evidence refuting findings at the exit conference.

[4] Although the final decision of the review official does not have all the characteristics of a "contested case"; General Statutes §§ 4-166 (4) and 4-177 et seq.; the procedural requirements of General Statutes § 4-183 are applicable.

[5] "[Medicaid] is a federal-state cooperative program designed to provide medical assistance to persons whose income and resources are insufficient to meet the costs of medical care. . . . General Statutes § 17b-2 (8) designates the department as the state agency responsible for administering the state's [M]edicaid program." (Citations omitted; internal quotation marks omitted.) *Goldstar Medical Services, Inc.* v. *Dept. of Social Services*, 288 Conn. 790, 794 n.2, 955 A.2d 15 (2008).

[6] The audit report described the extrapolation methodology used to calculate the overpayment as follows: "A sample of 100 client claim histories paid during the audit period was reviewed. This sample was chosen by computer using a random sampling method from a total universe of 1,295 paid clients. Each sample client history was reviewed in accordance with the objective of the audit. Errors found in the sample client history that

resulted in a financial disallowance were extrapolated to the universe of paid clients. The average financial disallowance per sample client history was multiplied by the total number of clients in the universe to determine the extrapolated audit adjustment." This description from the audit report is the only exposition in the record of the statistical methodology governing the selection of samples and extrapolation from those samples.

[7] Section 17b-99 (d) has since been amended to provide for an administrative hearing. Public Acts, Spec. Sess., June, 2015, No. 15-5, § 400.

[8] General Statutes (Rev. to 2013) § 17b-99 (d) (9), which was repealed and replaced in 2015; see Public Acts 2015, Spec. Sess., June, 2015, No. 15-5, § 400; stated that "[a] provider may appeal a final decision issued pursuant to subdivision (8) of this subsection to the Superior Court in accordance with the provisions of [the UAPA]." Although this was not a contested case, § 17b-99 (d) (9) provided the plaintiff with a mechanism by which to obtain judicial review.

[9] Because the present case was not a contested case and there was no formal hearing, not all of the language of the substantial evidence rule is specifically applicable. We nonetheless recognize and adhere to the principles of deference to the agency as well as insistence upon the protection of substantial rights of the individual. See generally *Beizer* v. *Dept. of Labor*, 56 Conn. App. 347, 355, 357, 742 A.2d 821, cert. denied, 252 Conn. 937, 747 A.2d 1 (2000).

[10] These four audit findings are the only items that the plaintiff raised in the statement of aggrievement submitted to the review official, and, as such, are the only items that we will address on appeal. See *Dickman* v. *Office of State Ethics, Citizen's Ethics Advisory Board*, 140 Conn. App. 754, 764, 60 A.3d 297 ("'[f]or this court to . . . consider [a] claim on the basis of a specific legal ground not raised during trial would amount to trial by ambuscade, unfair both to the [court] and to the opposing party' "), cert. denied, 308 Conn. 934, 66 A.3d 497 (2013).

[11] In its brief, the plaintiff argues that the review official did not request additional copies of the missing X-rays, "[y]et, in his Audit Review Final Decision, [the review official] faulted the plaintiff for not providing additional copies . . . ." Because the auditor calculated an overpayment based on the absence or inadequacy of documentation, the plaintiff, who requested review of that decision, had at least the initial burden of producing the missing documentation. Although the plaintiff claims that it "could not have divined that [the review official] would consider the submission of additional X-rays to be a requirement" and that it "did not know who bore the burden of proof in the final audit review process," the only party that could have provided the documentation was the plaintiff.

[12] In its reply brief, the plaintiff urges us, in the event that we do not conclude the plain error doctrine is applicable, to address the two issues it did not raise before the defendant under our supervisory power. "[O]ur supervisory powers are invoked only in the rare circumstance where [the] traditional protections are inadequate to ensure the fair and just administration of the courts . . . ." (Internal quotation marks omitted.) *Somers* v. *Chan*, 110 Conn. App. 511, 533, 955 A.2d 667 (2008). The plaintiff had the opportunity to seek review of these issues at the agency level of these proceedings, thus, the court's decision not to hear the unraised claims cannot be characterized as "inadequate to ensure the fair and just administration of the courts . . . ." (Internal quotation marks omitted.) Id. The use of our supervisory power, then, is not warranted in this situation.

[13] General Statutes (Rev. to 2013) § 17b-99 (d) (11) provides: "The commissioner shall adopt regulations, in accordance with the provisions of chapter 54, to carry out the provisions of this subsection and to ensure the fairness of the audit process, including, but not limited to, the sampling methodologies associated with the process."

[14] General Statutes (Rev. to 2013) § 17b-99 (d) (2) provides that "[a]ny clerical error, including, but not limited to, recordkeeping, typographical, scrivener's or computer error, discovered in a record or document produced for any such audit shall not of itself constitute a wilful violation of program rules unless proof of intent to commit fraud or otherwise violate program rules is established."

[15] The mandate to enact regulations has since been repealed. Public Acts, Spec. Sess., June, 2015, No. 15-5, § 400. We note, however, that more detailed standards governing audits were enacted in the same public act.

[16] We note that where the plaintiff produced documentation which refuted a disallowance by the auditor, adjustments were made. Thus, the plaintiff had the opportunity, in effect, to address and to correct "clerical errors" in

any event.

[17] In one such example, Caserta attacked the auditor's use of extrapolation in the audit on the basis that extrapolation produced results that were inconsistent with the work actually completed by the plaintiff. "There are many references to 'no documentation' as a justification for denying payment . . . . Sample 55 in the patient pool . . . is a classic example of the total disregard for . . . facts by your committee. As can be readily seen from the patient's chart ALL work has been dated and properly documented. The lone exception would be [the code used for partial dentures]. Here too, you have applied the principle of extrapolation and have come up with the invalid conclusion that—this based on extrapolation—13 patients did not receive their partial dentures. Insofar as I only performed this procedure 27 times in the entire time period that [was audited], it would mean that 50% of my patients did not get their dentures! Once again, this is NOT supported by facts. . . . There is no justification for such denial, and I will not accept it."

The plaintiff is correct that statistical sampling may produce results in certain circumstances that do not reflect with complete accuracy the work providers perform. Imperfect though it may be, statistical sampling, nevertheless, has been recognized by courts, and approved by the legislature, as a valid approach to conducting Medicaid audits. The plaintiff did not indicate in its statement of aggrievement that the exact method of extrapolation used by the auditor was flawed, and that, perhaps, a different method might have produced more accurate results. The plaintiff also did not suggest that the auditor had made a mistake in applying the statistical principles of extrapolation or miscalculated the overpayments. Rather, the plaintiff levied a broad attack against the use of statistical sampling at all.

[18] See footnote 5 of this opinion.

[19] The plaintiff argues that *Goldstar Medical Services*, *Inc.*, is not dispositive, claiming that "*Goldstar* approved the use of extrapolation methodology in a Medicaid audit conceptually, but it did not adopt or endorse a specific extrapolation methodology, and it did not approve the use of any and every conceivable methodology. The full scope of the exact extrapolation methodology which was used by the defendant in its audit of the plaintiff cannot be discerned from the four sentence description of the methodology contained in the [Audit Review Final Decision], and the record sheds no light on whether that methodology, whatever it was, was properly employed and implemented."

The record does not contain more specific evidence about the manner in which the extrapolation methodology was applied in this case because the plaintiff did not raise this claim regarding the precise statistical methodology to be applied before the review official. Instead, the plaintiff raised a legal argument about the use of extrapolation as a general principle at all. The use of extrapolation was generally accepted by our Supreme Court in *Goldstar Medical Services*, *Inc.*; therefore, the plaintiff's argument that our Supreme Court approves the use of extrapolation only "conceptually," but does not "approve" the use of extrapolation as applied in this case is not a persuasive rationale for reversal.