******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# RAYMOND GODAIRE *v.* DEPARTMENT OF SOCIAL SERVICES ET AL.
## (AC 39068)

Alvord, Sheldon and Norcott, Js.

*Syllabus*

The plaintiff appealed to this court from the judgment of the trial court dismissing his administrative appeal from the decision of the defendant Department of Social Services discontinuing the plaintiff's medical benefits under a medical assistance program for the aged, blind and disabled on the ground that he had not met the program's spenddown requirements. Prior to an administrative hearing on the matter, the Department of Social Services redetermined that the plaintiff, who was eighty-two years old at the time, was eligible for the program's benefits under a spenddown totaling $1929.72 for the period March, 2015, through August, 2015. The plaintiff previously was granted coverage under the program from August, 2014, to January, 2015, and certain dental work was to be included in that coverage. Because the dental work would not be completed until the second week of February, beyond the coverage date, a department employee extended the plaintiff's coverage under the program for one month to include February. At the hearing held on April 1, 2015, an eligibility specialist for the department told the hearing officer that the department's reinstatement of the plaintiff's benefits for one month had to be corrected, and following the hearing, a corrected eligibility document was submitted to the hearing officer indicating that the plaintiff's spenddown period would run from February, 2015, to July, 2015, rather than from March, 2015, to August, 2015. The hearing officer denied the plaintiff's appeal from the discontinuation of his medical benefits and concluded that the department correctly determined that the plaintiff had to meet a spenddown to receive the program's coverage beginning February, 2015. The plaintiff thereafter, pursuant to statute (§ 4-183), filed his administrative appeal from the hearing officer's decision in the Superior Court in the judicial district of New London. Subsequently, the trial court transferred the appeal to the Tax and Administrative Appeals Session in the judicial district of New Britain. The plaintiff, who resided in New London, filed an objection to the change of venue that was overruled by the trial court, which permitted the plaintiff to appear at the courthouse in New London and to participate in the hearing by way of closed-circuit television. The trial court thereafter dismissed the plaintiff's administrative appeal, and this appeal followed. The plaintiff claimed that the trial court had no authority to transfer his appeal from New London to New Britain, and that the court should have sustained his appeal, pursuant to § 4-183 (j), because the hearing officer's decision was made upon unlawful procedure in that it was made on the basis of records that were changed by the department to reflect a redetermined spenddown period beginning in February, 2015, rather than March, 2015, which prevented the plaintiff from receiving benefits for the dental procedures that he needed in February, 2015. *Held*:

1. The plaintiff's claim that he was denied access to the court due to the change of venue was unavailing; the trial court properly determined that there was authority for the transfer pursuant to statute (§ 51-347b [a]), which permits transfers when required for the efficient operation of the courts and to ensure the prompt and proper administration of justice, and the plaintiff having been afforded his due process rights by being allowed to participate in the hearing via closed-circuit television, he was not denied access to the courts and he could not demonstrate any prejudice to his rights as a result of the transfer of his administrative appeal.

2. Under the circumstances of the present case, the hearing officer's decision to discontinue the plaintiff's medical benefits was made upon unlawful procedure, as the plaintiff did not have a meaningful opportunity to respond to the "corrected" evidence presented by the department at the end of the April 1, 2015 hearing, and, therefore, substantial rights of the plaintiff were prejudiced: the evidence in the administrative record

showed that the department had advised the plaintiff that his new coverage period for the program's benefits would run from March, 2015, through August, 2015, that the plaintiff's dental work begun in the prior coverage period was covered through February, 2015, because he had satisfied the spenddown requirements for that period, that an employee of the department had extended the plaintiff's coverage through February so that he could have his dental work paid for and completed, and that, on the basis of the documents existing at the time that he appeared at the April 1, 2015 hearing, the plaintiff was operating under the reasonable belief that he had satisfied the program's prior spenddown requirements, was covered through February, and did not need to present any additional bills for his dental work; moreover, the department's retroactive change to the eligibility period resulted in the denial of coverage for the plaintiff's dental work, the plaintiff having been informed by the department that his eligibility period had been extended through February, 2015, he detrimentally relied on such information to not meet the corrected deadline of January 31 for obtaining and presenting a bill for the dental work that had already begun that would have entitled him to payment for the completion of such work, and therefore, his preexisting eligibility through February, 2015, was required under the doctrine of equitable tolling, as he should not have been penalized for failing to timely obtain and produce the dental bill when he could have done so if the department had properly advised him before January 31 that the prior eligibility period would not in fact be extended.

Argued April 18—officially released June 21, 2017*

(Appeal from Superior Court, judicial district of New Britain, Schuman, J.)

*Procedural History*

Appeal from the decision of the named defendant discontinuing certain of the plaintiff's medical benefits, brought to the Superior Court in the judicial district of New London, and transferred to the judicial district of New Britain; thereafter, the matter was tried to the court, *Schuman, J.*; judgment dismissing the appeal, from which the plaintiff appealed to this court. *Reversed; judgment directed.*

*Raymond Godaire*, self-represented, the appellant (plaintiff).

*Tanya Feliciano DeMattia*, assistant attorney general, with whom, on the brief, was *George Jepsen*, attorney general, for the appellees (defendants).

*Opinion*

ALVORD, J. The self-represented plaintiff, Raymond Godaire, appeals from the trial court's dismissal of his appeal from the final decision of the defendant the Department of Social Services (department).[1] The decision appealed from discontinued the plaintiff's benefits under the department's Medical Assistance to the Aged, Blind, and Disabled program (program or Husky C) on the ground that he had not met the program's spend-down requirements. On appeal, the plaintiff claims that the court improperly (1) concluded that the transfer of his administrative appeal from the judicial district of New London to the judicial district of New Britain did not violate his due process rights by denying him reasonable access to the courts, and (2) failed to conclude that his appeal should be sustained because the hearing officer's decision was based on "faulty records" and "records changed by the department . . . ." We reverse the judgment of the trial court for the reason that substantial rights of the plaintiff have been prejudiced because the hearing officer's decision was made upon unlawful procedure. See General Statutes § 4-183 (j).[2]

The following facts, as found by the hearing officer or as undisputed in the record, and procedural history are relevant to the resolution of the plaintiff's claims. By notice dated January 28, 2015, the department advised the plaintiff that his medical assistance under Husky C was to be discontinued on January 31, 2015, due to his failure to "complete the review process." The plaintiff, aged eighty-two at that time, requested an administrative hearing to contest the department's action. On February 2, 2015, prior to the scheduled hearing, the department completed the plaintiff's "redetermination" and concluded that he was eligible for the program's benefits "under a spenddown totaling $1929.72 for the period March, 2015 through August, 2015."[3] The plaintiff was sent notice of that redetermination.

The administrative hearing was held before a hearing officer on April 1, 2015. At the hearing, the plaintiff represented that he had been in the process of completing some dental work when he received the department's notice that he was required to meet a spenddown requirement before the dental work could continue. According to the plaintiff, the department had previously advised his dentist that it would pay for the making of his false teeth. When the plaintiff reached the time for his last appointment, which had been scheduled for the first or second week of February, 2015, the dentist was notified by the department that the plaintiff's benefits had been discontinued. As a result of this notification, the plaintiff's appointment was canceled and all work on the false teeth ceased.

The department's Eligibility Services Specialist, Gary

Sardo, read the Medicaid hearing summary into the record at the April 1, 2015 hearing. The summary sets forth the issue as follows: "[The plaintiff] receives $1182 monthly in [Social Security Administration] benefits. His income is in excess of the monthly gross limit for S99 Medicaid eligibility. [The plaintiff's] *period of eligibility runs from March 1, 2015, to August 31, 2015*. His current spenddown amount is $1929.72. [The plaintiff] does not agree with the fact that he is on a spenddown." (Emphasis added.) Also part of the administrative record was a notice for spenddown, dated March 30, 2015, which advised the plaintiff: "Your income is too high for you to receive medical assistance now. However, *you may still receive medical assistance from March, 2015, to August, 2015*. To be eligible, you must show us that you have medical bills that you owe or have recently paid. When your bills total $1929.72, your eligibility for medical assistance will begin." (Emphasis added.)

The plaintiff told the hearing officer that he had submitted the requisite medical bills for the period from August, 2014, through January 31, 2015. As acknowledged by Sardo at the hearing, the department employee who assisted the plaintiff had "reinstated [the benefits] for one month, February [2015] . . . ." A letter from the department to the plaintiff dated February 18, 2015, titled "Appeal Resolution Notice," appears to confirm this statement. Referring to the discontinuance of the program's benefits, the letter advised: "Our records show that since the time you requested this hearing, the agency has taken the following action to address the above mentioned matter that you have appealed: Benefits reinstated." Despite these documents indicating that the plaintiff's benefits had been reinstated for the month of February, 2015, and that the new redetermination period would run from March, 2015, through August, 2015, Sardo told the hearing officer that the department's reinstatement of the plaintiff's benefits for one month "would need to be corrected." The hearing officer inquired: "Then let me ask, if the department should have begun the spenddown February 1, why wasn't any action taken to correct that prior to today's hearing?" Sardo responded: "I just noticed it."

Later during the hearing, the hearing officer asked Sardo if he would "be able to pull off the Connect system [the plaintiff's] actual redetermination and any supporting documents that he submitted with that." Sardo responded that he would. At the very end of the hearing, the hearing officer stated: "And then also make sure, Mr. Sardo, since you'll be submitting that redetermination and supporting documents along with the shelter screen and the . . . fee screen, that you make copies to send to Mr. Sardo [sic] as well, so that he knows what I'm looking at as well." Sardo responded that he would get the requested documents to the hearing officer by the end of the day. Following the hearing,

a "corrected" financial eligibility screen print was submitted to the hearing officer that indicated that the plaintiff's redetermination period "begin date" was February, 2015, and "end date" was July, 2015. In the hearing officer's notice of decision dated April 28, 2015, she made the following finding of fact: "On April 1, 2015, the department corrected the spenddown period from March, 2015, through August, 2015, to February, 2015, through July, 2015. No change made to spenddown amount." The hearing officer denied the plaintiff's appeal, concluding that "the department correctly determined [that the plaintiff] must meet a spenddown to receive [the program's] coverage beginning February, 2015."

On June 11, 2015, the plaintiff, who resides in New London, filed this administrative appeal from the hearing officer's decision in the Superior Court for the judicial district of New London, pursuant to General Statutes § 4-183. The court transferred the appeal to the Tax and Administrative Appeals Session in the judicial district of New Britain. The plaintiff filed an objection to the change of venue on June 25, 2015, which was overruled by the court on June 26, 2015. Oral argument on the merits of the appeal was scheduled for March 11, 2016. The court permitted the plaintiff to appear at the courthouse in New London and to participate in the hearing by way of closed-circuit television.

In his administrative appeal, the plaintiff alleged, inter alia, that (1) "on February 2, 2015, [the] Husky C spenddown extended through [the] last day of February, 2015," (2) "on April 1, 2015, [the] 'Hearing Summary' [provided that] . . . Husky C extended through [the] last day of February, 2015," (3) "the hearing officer and [Sardo] . . . opened the hearing after [the] plaintiff was gone on April 1, 2015, to change [the] plaintiff's Husky C eligibility date . . . to make the decision to discontinue [the] plaintiff's Husky C medical [benefits] within the right time frame, thus denying [the] plaintiff coverage for his false teeth," (4) "[General Statutes] § 4-183 . . . permits modification or reversal of an agency's decision if substantial rights of the appellant have been prejudiced because the administrative findings . . . conclusions, or decisions are . . . made upon unlawful procedure," (5) the department "canceled payment for [the] plaintiff's false teeth on [January 31, 2015], and this date would not hold up if [the] plaintiff had coverage [until] the end of February, 2015," (6) "the office manager [at New London Dental Care] called [the department] and was told [that the department] would pay for the false teeth. Work was begun to make [the] plaintiff's false teeth. [The plaintiff's] last appointment before [he] received [his] false teeth fell on [February 9, 2015]. [The plaintiff] called [the department] and told [it that] the appointment fell on a date beyond [his] coverage date. [The department] said the date would be changed so [the plaintiff] could get [his]

false teeth, from [August, 2014], to [January 31, 2015], changed to [August, 2014], to [February, 2015]," and (7) "the hearing officer's decision was made under unlawful procedures . . . ." (Citations omitted; internal quotation marks omitted.)

Prior to the March 11, 2016 hearing before the court, the plaintiff filed a prehearing brief in which he set forth his claims and arguments. In the section titled "Statement of the Case," the plaintiff made the following representations: "[The] plaintiff was granted Husky C . . . coverage from August, 2014, to January, 2015. [The] plaintiff was allowed to have his upper teeth pulled with the understanding that New London Dental [Care] would make up an upper plate to replace the teeth which were removed. [The department] notified New London Dental [Care] that [the department] would pay for the replacement plate. The making of the false teeth went beyond the January coverage [the] plaintiff had with his Husky C . . . August, 2014, to January, 2015. The teeth were to be completed the second week of February, 2015. [The department's] worker extended [the] plaintiff's Husky C . . . for one month so [the] plaintiff would receive his teeth. Coverage included February, 2015. [The department] now states no extension was granted, and if one was, it was a mistake." In support of his argument that he was covered through February, 2015, the plaintiff referred to the department's letter to him dated February 2, 2015, which stated that new coverage would start in March, 2015, and run through August, 2015, if the plaintiff met certain spenddown requirements. Additionally, the plaintiff referred to the hearing summary, which had been sent to him by Sardo and had been cosigned by Sardo's supervisor, which stated that the plaintiff's new coverage period would be from March 1, 2015, to August 31, 2015. That hearing summary was read into the administrative record at the April 1, 2015 hearing. The plaintiff argued that both of those documents demonstrated that February, 2015, was covered in the prior spenddown period and that he had satisfied those requirements.

In his prehearing brief, the plaintiff also referred to the hearing officer's action in allowing the department to change the dates of the redetermination period. According to the plaintiff: "[The] plaintiff was previously covered by Husky C . . . from August, 2014, through February, 2015. . . . [The action] change[d] that coverage back to August, 2014, to January, 2015, denying [the] plaintiff coverage for the completion of his false teeth and conform[ing] to the decision of the hearing officer." The documents in the administrative record support these representations regarding the change in coverage periods.

The department, in its prehearing brief filed on January 29, 2016, acknowledged that "the administrative record . . . shows that on February 2, 2015, [the

department] completed the plaintiff's recertification for [the program] and determined that he was eligible for [the program's benefits], subject to a spenddown totaling $1929.72, for the time period of *March, 2015, through August, 2015. . . .* [The department] notified the plaintiff that he would need to submit medical bills totaling $1929.72 to meet the spenddown requirements in order to become eligible for [the program's] coverage for the *March, 2015, [to] August, 2015 period.*" (Citations omitted; emphasis added.) The department further acknowledged that the period was changed at the April 1, 2015 hearing: "At the administrative hearing, [the department] determined that its determination of a spenddown period of March [to] August, 2015, as noted in the [notice from the department to the plaintiff dated January 28, 2015] was incorrect because the prior spenddown period had been from August, 2014, [to] January, 2015. . . . *The spenddown period was corrected to February, 2015, [to] July, 2015*, although there was no change to the $1929.72 spenddown amount." (Citations omitted; emphasis added.) In a footnote in its prehearing brief, the department stated: "It appears that the plaintiff considers [the] correction of this error (correcting the beginning of the spenddown period from March, 2015, to February, 2015) to be the revocation of an 'extension' of his prior six month eligibility period."

The teleconference hearing before the court was held on March 11, 2016. At that time, the plaintiff read excerpts from the transcript of the April 1, 2015 hearing before the hearing officer. He referred to the hearing officer's question: "Okay. So is [the plaintiff] under a spenddown for the month of February as well?" Sardo responded: "He's on a one month spenddown and that's incorrect."[4] The plaintiff argued to the court: "[The department] also stated that [it] didn't know the spenddown for February was incorrect until the hearing of April 1. So how could [the department] possibly deny Husky [C] coverage in February when [the department] didn't know it was an error?" The plaintiff also told the court that the documents in the administrative record showed that his income was too high, but that he still might receive benefits from March, 2015 through August, 2015: "The [month of] February was covered by the previous spenddown. Other than that, [the plaintiff] would have had February, 2015, to July, 2015."

Additionally, the plaintiff argued to the court: "I'm not a mind reader. I was covered in February by [the department's] own documents and [it] told me I was covered. [The department] told me [and] the dentist [that it] would pay [the bill]. Now, [the department] declares a ruling [that it is] no longer going to pay for it." The attorney for the department responded to the plaintiff's claim pertaining to the change in the coverage period as follows: "[The court is] correct in noting that the—I believe it was a typo, was noticed at the hearing.

. . . [T]he record was held open for additional documents while this correction was made, so [the plaintiff] was aware at the time. I don't believe he presented any evidence at the hearing about these specific dental bills."

The court issued its memorandum of decision on March 14, 2016. The court first addressed the plaintiff's claim that the court had no authority to transfer his administrative appeal from New London to New Britain and concluded that General Statutes § 51-347b (a)[5] authorized such a transfer. The court referred to two standing orders that permit the transfer of Uniform Administrative Procedure Act appeals from the court where initially filed to the Tax and Administrative Appeals Session at the judicial district of New Britain. Furthermore, the court concluded that the plaintiff could not demonstrate that substantial rights of his had been prejudiced by the transfer because the plaintiff was permitted to appear in the courthouse in New London and to participate in the hearing by way of a closed-circuit television.

The court next addressed the plaintiff's claim that the department "changed the administrative record from one reflecting a spenddown period beginning in March, 2015, to one beginning in February, 2015," which "prevented him from receiving benefits for dental procedures that he needed in February, 2015." The court rejected the plaintiff's claim: "At the end of the hearing, the hearing officer reiterated that the department would submit 'that redetermination' and the department stated that it could do so 'by the end of today.' " The court noted that exhibit 7 in the administrative record was the corrected redetermination document and that the document had been submitted by the department "on April 1 [2015], after the hearing, just as it promised to do at the hearing itself." The court determined that "[t]he exhibit merely confirmed the department's representations at the hearing that it had corrected the plaintiff's records so that the spenddown period would begin in February rather than March, 2015. . . . The plaintiff was present at the hearing and never voiced any objection as the hearing officer and the department discussed submitting the supplemental exhibit." Accordingly, the court concluded that "there is no merit to the plaintiff's complaint." The court affirmed the department's decision and dismissed the plaintiff's administrative appeal. This appeal followed.

Even though we are reversing the judgment on another ground, we address the plaintiff's first claim that he was denied access to the courts, because his appeal was transferred from New London to New Britain, for the reason that it is likely to arise in any subsequent proceedings. See *State* v. *A. M.*, 156 Conn. App. 138, 156–57, 111 A.3d 974 (2015), aff'd, 324 Conn. 190, 152 A.3d 49 (2016). The plaintiff's argument merits little

discussion. We agree with the trial court that there is statutory authority for the transfer; General Statutes § 51-347b (a); and that the plaintiff was afforded his due process rights by being allowed to participate in the hearing via closed-circuit television. The plaintiff was not denied access to the courts, and he cannot demonstrate any prejudice to his rights as a result of the transfer of his administrative appeal.

The plaintiff's next claim is that the trial court should have sustained his appeal because the hearing officer's decision was based on "faulty records" and "records changed by the department . . . ." The plaintiff argues that the decision violated his rights because, inter alia, it was "made upon unlawful procedure . . . ." He argues: "The department and its attorney altered documents to fit the hearing officer's decision. The hearing officer was a party to the altering of [the] plaintiff's Husky C . . . coverage, changing it from coverage for the month of February, 2015, to no coverage, by their change to January, 2015." We agree that substantial rights of the plaintiff have been prejudiced because the hearing officer's decision was made upon unlawful procedure. See General Statutes § 4-183 (j).

We begin with the applicable standard of review. "[J]udicial review of an administrative agency's action is governed by the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq., and the scope of that review is limited. . . . When reviewing the trial court's decision, we seek to determine whether it comports with the [UAPA]." (Internal quotation marks omitted.) *Dickman* v. *Office of State Ethics, Citizen's Ethics Advisory Board*, 140 Conn. App. 754, 766, 60 A.3d 297, cert. denied, 308 Conn. 934, 66 A.3d 497 (2013). "Conclusions of law reached by the administrative agency must stand if . . . they resulted from a correct application of the law to the facts found and could reasonably and logically follow from such facts. . . . The court's ultimate duty is only to decide whether, in light of the evidence, the [agency] has acted unreasonably, arbitrarily, illegally, or in abuse of [its] discretion." (Internal quotation marks omitted.) Id., 767.

"General Statutes § 4-183 (a) provides an avenue for any person, aggrieved by a final administrative decision, to appeal to the Superior Court." *Searles* v. *Dept. of Social Services*, 96 Conn. App. 511, 513, 900 A.2d 598 (2006). Section 4-183 (j) provides, in relevant part, that "[t]he court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . made upon unlawful procedure . . . ."

We note that there is a paucity of case law that discusses the issue of whether the decision of an administrative agency is improper because it was made upon unlawful procedure. Nevertheless, we find the case of

*Henderson* v. *Dept. of Motor Vehicles*, 202 Conn. 453, 521 A.2d 1040 (1987), to be instructive. In *Henderson*, the plaintiff appealed from a decision of the adjudication unit of the Department of Motor Vehicles that suspended his license because of his involvement in a fatal accident. Relying on General Statutes (Rev. to 1987) § 4-183 (g) of the UAPA, subsequently amended and renumbered as § 4-183 (j), the plaintiff argued that the agency's decision had been made upon unlawful procedure because it had received an ex parte communication. Id., 454–58. Although the issue certified for appeal was whether the plaintiff had the burden of proving prejudice to substantial rights under those circumstances, our Supreme Court nevertheless recognized that "an ex parte communication by an adjudicator concerning a case before him would indicate that the decision had been 'made upon unlawful procedure,' a ground for reversal or modification specifically mentioned in § 4-183 (g) (3)." Id., 458. We conclude that the circumstances of this case are similar to those in *Henderson*, in that the plaintiff did not have a meaningful opportunity to respond to the "corrected" evidence presented by the department at the end of the April 1, 2015 hearing.

The evidence in the administrative record supports the plaintiff's claim that the department had advised him that his new coverage period for the program's benefits would run from March, 2015, through August, 2015, and that his dental work begun in the prior period was covered through February, 2015, because he had satisfied the spenddown requirements for that period. The evidence further supports the plaintiff's claim that he proceeded at the April 1, 2015 hearing under those reasonable assumptions as to his satisfaction of the program's prior spenddown requirements.

The plaintiff consistently and persistently has claimed that an employee of the department extended his coverage through February, 2015, so that he could have his dental work paid for and completed. There is evidence in the administrative record to support that claim and, in fact, the department acknowledged that it appears that an extension had been given, but that it was "incorrect" and needed to be "corrected." The plaintiff, however, on the basis of the documents existing at the time that he appeared at the April 1, 2015 hearing, was operating under the reasonable belief that he was covered through February and, therefore, did not need to present any additional bills for his dental work. There was no reason for him to have presented the bill from New London Dental Care for the completion of his false teeth because (1) he had been advised when the extension had been granted that the work to be completed in February would be covered by the program, (2) his documents from the department provided that he was covered through February, 2015, and (3) his dental work was to be completed in the second

week in February, and he had met the requirements for coverage for the previous period. He already had had his upper teeth removed in preparation for the upper dental plate, and was about to attend his last dental appointment when he was told that the work was no longer covered. At the April 1, 2015 hearing, he was told that the department's documents were incorrect and that the documents needed to be changed to reflect that he was not covered for work completed in February, 2015. The hearing officer allowed the submission of the "corrected document," which had the effect of excluding him from coverage, after the hearing.[6]

Under the circumstances of this case, we conclude that the decision was made upon unlawful procedure. Although the plaintiff has not used the term "equitable tolling" in his administrative appeal, in his briefs or in his arguments to the trial court or this court, the substance of his claim falls within the parameters of that doctrine. He has argued, with support from the record, that the department retroactively changed the eligibility period, thereby resulting in the denial of coverage for the remainder of his dental work. Having been informed by the department that his eligibility period had been extended through February, 2015, the plaintiff detrimentally relied on such information to not meet the corrected deadline of January 31, 2015, for obtaining and presenting a bill from New London Dental Care for work that had already begun that would have entitled him to payment for the completion of such work. "We treat 'equitable tolling' as a doctrine inclusive of waiver, consent, or estoppel, that is, as an equitable principle to excuse untimeliness." *Williams* v. *Commission on Human Rights & Opportunities*, 67 Conn. App. 316, 320 n.9, 786 A.2d 1283 (2001). The plaintiff should not be penalized for failing to timely obtain and produce the dental bill when he could have done so if the department had properly advised him before January 31, 2015, that the prior eligibility period would not in fact be extended. The plaintiff's preexisting eligibility through February, 2015, is required under the equitable tolling doctrine, and the department is ordered to proceed in accordance with this opinion.

The judgment is reversed and the case is remanded with direction to render judgment sustaining the plaintiff's appeal.

In this opinion the other judges concurred.

* June 21, 2017, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] Gary Sardo, an eligibility service specialist for the department, was also named as a defendant in this appeal, and we refer to him by name.

[2] General Statutes § 4-183 (j) provides: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) *made upon unlawful procedure*; (4) affected by other error of law; (5) clearly erroneous in view of the

reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. For purposes of this section, a remand is a final judgment." (Emphasis added.)

[3] Eligibility for the program's benefits is redetermined by the department every six months.

[4] Sardo went on to explain: "It should be a six month spenddown but the worker who worked on it did a reinstatement instead of a regranting [of] the case."

[5] General Statutes § 51-347b (a) provides in relevant part: "Any action or the trial of any issue or issues therein may be transferred, by order of the court on its own motion or on the granting of a motion of any of the parties, or by agreement of the parties, from the superior court for one judicial district to the superior court in another court location within the same district or to a superior court location for any other judicial district, upon notice by the clerk to the parties after the order of the court . . . . The Chief Court Administrator or any judge designated by the Chief Court Administrator to act on behalf of the Chief Court Administrator under this section may, on motion of the Chief Court Administrator or any such judge, when required for the efficient operation of the courts and to insure the prompt and proper administration of justice, order like transfers."

[6] We do not believe that the plaintiff's failure to object at the hearing warrants a different conclusion. After reading the transcript, it is not at all clear exactly what was going to be submitted later that day to the hearing officer by the department. The plaintiff had also challenged the department's determination with respect to his receipt of food stamps, which is not at issue in this appeal, and the plaintiff reasonably could have been confused. We accord the plaintiff "the leniency traditionally afforded to inexperienced pro se parties . . . ." (Internal quotation marks omitted.) *Bridgeport Dental, LLC* v. *Commissioner of Social Services*, 165 Conn. App. 642, 657, 140 A.3d 263, cert. denied, 322 Conn. 908, 140 A.3d 221 (2016).

––––––––––––––––––––