******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# NUTMEG STATE CREMATORIUM, LLC, ET AL.
## *v.* DEPARTMENT OF ENERGY AND ENVIRONMENTAL PROTECTION ET AL.
### (AC 43834)

Elgo, Suarez and Sullivan, Js.

*Syllabus*

The plaintiffs appealed to this court from the judgment of the trial court dismissing their administrative appeal from the decision of the Commissioner of Energy and Environmental Protection denying their applications for two new source air permits. The plaintiffs sought the required permits from the defendant Department of Energy and Environmental Protection in order to install and operate two cremation machines at the site of their proposed crematorium. After a hearing, a department hearing officer issued a decision recommending that the plaintiffs' permit applications be denied on the basis that the plaintiffs' cremation system exceeded the maximum allowable stack concentration (MASC) for emissions of mercury pursuant to the applicable regulation (§ 22a-174-29). The commissioner adopted the hearing officer's decision and issued a final decision affirming the denial of the permit applications. *Held*:

1. The plaintiffs could not prevail on their claim that § 22a-174-29 (b) (2) should be interpreted to require mercury to be measured at the property line, at which point the mercury would be in its particulate form and calculating the MASC would be unnecessary, as it was clearly contrary to what a plain reading of the regulation provided; this court, like the commissioner and the trial court, interpreted § 22a-174-29 (b) (2) to require the calculation of the MASC for emissions of mercury in its vapor form at the discharge point from the crematorium stacks.

2. The plaintiffs could not prevail on their claim that the trial court erred by interpreting improperly the term ambient air: the trial court properly interpreted § 22a-174-29 (b) (2), and, in light of this court's review of the record and the considerable discretion afforded to the commissioner on questions of facts, the trial court properly applied that regulation to the facts of the present case when it concluded that the commissioner's decision to deny the plaintiffs' applications was not unreasonable, arbitrary, capricious, illegal or an abuse of discretion, as the data presented to the commissioner demonstrated that the concentration of mercury vapor at the discharge point would exceed the MASC for mercury.

3. The plaintiffs' contention that the trial court went beyond the pleadings and improperly adjudicated issues not raised on appeal was unfounded: because the plaintiffs claimed that the commissioner misinterpreted and misapplied § 22a-174-29, it was clearly necessary for the court to consider the interpretation of that regulation, along with how it should be applied to the facts of the present case, in order to resolve the plaintiffs' appeal.

4. The plaintiffs could not prevail on their claim that the trial court erred by violating binding legal precedent and the applicable statute (§ 4-183 (j)): although the plaintiffs argued that the commissioner's decision was made upon unlawful procedure on the basis that he improperly admitted a certain letter from department staff into evidence without providing the plaintiffs the opportunity to respond or to cross-examine the staff, the commissioner made clear that the letter was not evidence and, therefore, there was no requirement to afford the plaintiffs the opportunity for cross-examination; moreover, the department's regulations did not prohibit such a letter, and the plaintiffs were able to respond to the letter by filing their objection; furthermore, the plaintiffs' claim that the court misunderstood the evidence and eschewed the expert opinions was simply unsupported by the record and, as this court already concluded, the court properly interpreted the regulations and properly applied the substantial evidence standard in its review of the commissioner's decision.

Argued October 21, 2021—officially released February 1, 2022

Appeal from the decision of the named defendant denying certain permit applications submitted by the plaintiffs, brought to the Superior Court in the judicial district of New Britain and tried to the court, *Cordani, J.*; judgment dismissing the appeal, from which the plaintiffs appealed to this court. *Affirmed.*

*Matthew S. Carlone*, for the appellants (plaintiffs).

*Benjamin W. Cheney*, assistant attorney general, with whom, on the brief, were *William Tong*, attorney general, *Clare Kindall*, solicitor general, and *Matthew I. Levine*, assistant attorney general, for the appellee (named defendant).

*Jesse A. Langer*, for the appellee (defendant Coles Brook Commerce Park Owners Association, Inc.).

*Opinion*

SULLIVAN, J. The plaintiffs, Luke DiMaria and Nutmeg State Crematorium, LLC,[1] appeal from the judgment of the Superior Court dismissing their administrative appeal from the decision of the Commissioner of Energy and Environmental Protection (commissioner), denying the plaintiffs' applications for two new source review air permits (air permits), which had been submitted by the plaintiffs to the defendant Department of Energy and Environmental Protection (department).[2] On appeal, the plaintiffs claim that the trial court erred by (1) concluding that the plaintiffs' cremation system exceeded the maximum allowable stack concentration (MASC) for mercury, (2) interpreting improperly the term "ambient air" to mean all atmosphere external to buildings, (3) adjudicating issues not raised in the administrative appeal, and (4) violating binding legal precedent and General Statutes § 4-183 (j).[3] We affirm the judgment of the court dismissing the plaintiffs' appeal.

The following facts and procedural history are relevant to our resolution of this appeal. On October 15, 2014, the plaintiffs submitted to the department their applications for two new air permits, pursuant to § 22a-174-3a (a) (1) of the Regulations of Connecticut State Agencies,[4] to install and operate two cremation machines necessary for cremating human remains at the site of their proposed crematorium located at 35 Commerce Drive in Cromwell. On January 2, 2015, the department issued a notice of sufficiency indicating that the applications were complete. Following the issuance of the notice of sufficiency, the department began to conduct a technical review of the applications. During this review period, department staff performed MASC calculations for various pollutants and compared them to emissions from the proposed crematorium. No MASC calculation was performed for mercury, however, because department staff decided to consider mercury in its particulate form, rather than in its vapor form.[5]

On August 31, 2016, the department issued its tentative determination to recommend approval of the air permits. In response, several business entities filed a request with the department to obtain intervenor status, which was granted on October 27, 2016. Evidentiary hearings were held on February 28, and on March 1 and 2, 2017. At the evidentiary hearings, the intervening parties argued to the department that the plaintiffs were responsible for showing compliance with the MASC for mercury in its vapor form because § 22a-174-29 (b) (2) of the regulations[6] requires that the MASC be calculated for the phase of mercury that it will be in at the discharge point from the crematorium stacks, which is in its vapor form. To support their contention, the intervening parties presented expert evidence from Eric

Epner, an engineer with expertise in air permitting and air pollution control. Epner performed a MASC calculation for mercury in its vapor form and concluded that the emissions from the proposed crematorium stacks would not satisfy the MASC for mercury pursuant to § 22a-174-29 (b) (2).

The hearing officer credited the evidence presented by the intervening parties and concluded that, on the basis of a plain reading of § 22a-174-29 of the regulations, the plaintiffs were responsible for showing compliance with the MASC for mercury in its vapor form, rather than in its particulate form. On August 11, 2017, the hearing officer issued his proposed final decision, which recommended that the commissioner deny the plaintiffs' applications. Subsequent to the hearing officer's proposed final decision, the Bureau of Air Management (bureau) at the department submitted a posthearing staff response stating that it would not file an exception to the proposed final decision and that it agreed with the conclusion of the hearing officer. Specifically, this response stated that the bureau agreed with the following conclusions of the hearing officer: (1) "[m]ercury vapor will in fact be emitted at the discharge point from the crematories," (2) "[t]he applicant[s] must demonstrate that emissions of mercury vapor from the crematories will comply with the [MASC] for mercury vapor, as calculated based on the hazard limiting value . . . for mercury vapor," and (3) "[t]he applicant[s] ha[ve] not demonstrated, through the permit application and hearing process that the emissions of mercury vapor from the crematories will comply with the [MASC] for mercury vapor, as calculated based on the hazard limiting value . . . for mercury vapor."

On August 28, 2017, the plaintiffs filed an objection to the bureau's response, seeking to strike it from the evidentiary record. The plaintiffs argued that the bureau's response was an improper posthearing submission and that § 22a-3a-6 (y) (3) (A) of the regulations[7] "only provides that a party may submit an exception to the proposed final decision of the hearing officer." On October 24, 2017, the commissioner issued his ruling on the plaintiffs' objection and motion to strike, concluding that "[t]here is nothing in the language of the rule, nor [have] the applicant[s] provided any other authority to support [their] claim that [§] 22a-3a-6 (y) (3) (A) or the related provision in Connecticut's Uniform Administrative Procedure Act . . . prohibits staff [of the department] from filing, or me from considering, [the] staff's [proposed final decision] response. . . . The applicant[s'] motion sought to have [the] staff's [proposed final decision] response stricken from the evidentiary record. . . . However, [the] staff's [proposed final decision] response is not evidence. . . . Since it is not evidence, [the] staff's [proposed final decision] response will not be included in the evidentiary record in this matter." (Emphasis omitted.)

On January 8, 2018, the commissioner issued his final ruling denying the plaintiffs' applications for new air permits. The plaintiffs subsequently appealed to the Superior Court, arguing that (1) "their constitutional right to due process was violated when . . . [the department] submitted evidence directly contradicting the evidence it proffered at trial and [in] its posttrial brief" and (2) the . . . commissioner misconstrued the [department's] regulations in justifying an arbitrary and capricious denial of the plaintiffs' applications." (Emphasis omitted.) The trial court rejected the plaintiffs' claims. This appeal followed. Additional facts will be set forth as necessary.

I

On appeal to this court, the plaintiffs first argue that the trial court erred by concluding that their cremation system exceeded the MASC for mercury. Specifically, the plaintiffs argue that § 22a-174-29 of the regulations does not require them to demonstrate that the mercury vapor emitted from the discharge point at the crematorium stacks complies with the regulation. Rather, the plaintiffs contend that the proper reading of the regulation requires the measure of mercury at the property line, at which point the mercury would be in its particulate form and calculating the MASC would be unnecessary. We disagree.

We begin our analysis by setting forth the appropriate standard of review. "The process of statutory interpretation involves the determination of the meaning of the statutory language as applied to the facts of the case, including the question of whether the language does so apply. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . Furthermore, [t]he legislature is always presumed to have created a harmonious and consistent body of law . . . [so that] [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction. . . . Because issues of statutory construction raise questions of law, they are subject to plenary review on appeal." (Internal quotation marks omitted.) *Robinson* v. *Tindill*, 208 Conn. App. 255, 264,    A.3d    (2021).

"Ordinarily, this court affords deference to the construction of a statute applied by the administrative agency empowered by law to carry out the statute's

purposes. . . . Cases that present pure questions of law, however, invoke a broader standard of review than is ordinarily involved in deciding whether, in light of the evidence, the agency has acted unreasonably, arbitrarily, illegally or in abuse of its discretion. . . . Furthermore, when [an] agency's determination of a question of law has not previously been subject to judicial scrutiny . . . the agency is not entitled to special deference. . . . [I]t is for the courts, and not administrative agencies, to expound and apply governing principles of law. . . . These principles apply equally to regulations as well as to statutes." (Internal quotation marks omitted.) *Cockerham* v. *Zoning Board of Appeals*, 146 Conn. App. 355, 364–65, 77 A.3d 204 (2013), cert. denied, 311 Conn. 919, 85 A.3d 653 (2014), and cert. denied, 311 Conn. 919, 85 A.3d 654 (2014).

With the foregoing principles in mind, we begin with the language of the regulation at issue in the present case. Section 22a-174-29 (b) (2) of the regulations provides in relevant part: "No person, who is required to maintain compliance with a permit under section 22a-174-3a of the Regulations of Connecticut State Agencies shall cause or permit the emission of any hazardous air pollutant listed in Table 29-1, 29-2 or 29-3 of this section from any stationary source or modification at a *concentration at the discharge point* in excess of the maximum allowable stack concentration unless such source is in compliance with the provisions of subsection (d) (3) of this section. . . ." (Emphasis added.) Several definitions of the terms used in the relevant regulation are pertinent to our resolution of this appeal. The term "discharge point" is defined as "any stack or area from which a hazardous air pollutant is released into the ambient air." Regs., Conn. State Agencies § 22a-174-1 (35). The term "stack" is defined as "any point in a source designed to emit solids, liquids, or gases into the air, including a pipe or duct . . . ." 40 C.F.R. § 51.100 (ff); see Regs., Conn. State Agencies § 22a-174-1 (109) (referring to definition set forth in 40 C.F.R. § 51.100 (ff) but providing "that stack shall also include a flare"). MASC is defined as "the maximum allowable concentration of a hazardous air pollutant in the exhaust gas stream at the discharge point of a stationary source under actual operating conditions." Regs., Conn. State Agencies § 22a-174-1 (68). A MASC calculation is performed using a formula specified in § 22a-174-29 (c) (1) of the regulations. Table 29-3 lists mercury particulate as a hazardous air pollutant but provides no numerical value for the MASC equation. Regs., Conn. State Agencies § 22a-174-29. The table, however, does provide a hazard limiting value for mercury in vapor form. Id., § 22a-174-29, Table 29-3.

The plaintiffs rely on the fact that there is no hazard limiting value for mercury in its particulate form listed in Table 29-3, and, as a result, they contend that there is no way to calculate the MASC for mercury at the

property line. The clear and unambiguous language of § 22a-174-29 (b) (2) of the regulations, however, requires that no hazardous air pollutant be emitted from the *discharge point* in excess of the MASC. It is undisputed that mercury will be in its vapor form at the discharge point at the stacks and that there *is* a hazard limiting value for mercury vapor.

Despite the plain and unambiguous language of § 22a-174-29 (b) (2) of the regulations, the plaintiffs nevertheless contend that this regulation should be interpreted to mean that no hazardous air pollutant found at the *property line* should exceed the MASC. Specifically, the plaintiffs argue that it is unnecessary to perform a MASC calculation as to mercury, using the hazard limiting value for mercury vapor, because mercury vapor will not exist at the property line. Contrary to the plaintiffs' argument, there is nothing in the regulation that provides that a MASC need not be calculated based on the existence or nonexistence of mercury vapor at the property line. Rather, the regulation clearly identifies the relevant point at which to measure the MASC as the *discharge point*. Here, it is undisputed that mercury vapor will be present at the discharge point—the relevant place of measurement per the plain reading of the regulation—not at the property line. The plaintiffs' interpretation is clearly contrary to what a plain reading of the regulation provides.

Although our review is plenary, we agree with the commissioner's and the trial court's interpretation of the regulation. The commissioner determined that § 22a-174-29 (b) (2) of the regulations requires the calculation of the MASC for mercury emissions in its vapor form. Likewise, the trial court concluded that "to determine whether this emission can be permitted, a MASC for mercury vapor in this particular situation must be calculated and compared to the actual expected emission." On the basis of the plain meaning of the regulation, we conclude that calculating the MASC for mercury vapor is required under § 22a-174-29 (b) (2).

## II

The plaintiffs next argue that the trial court erred by interpreting improperly the term "ambient air" to mean all atmosphere external to buildings. Specifically, the plaintiffs contend that "[t]he record unequivocally establishes that the term '[a]mbient [a]ir' must be interpreted as commensurate with the applicant's property line . . . . [T]he MASC formula in [§ 22a-174-29 (b) of the regulations] . . . . is a differential equation constructed to calculate the MASC at the discharge point so that the concentration of only those [hazardous air pollutants] present at the applicant's property line may be calculated . . . ." (Emphasis omitted.) The department contends that "[t]he terms used to define MASC make it clear that MASC is intended to regulate [hazardous air pollutants] emitted from the stack." It further

contends that "[t]he hearing officer credited . . . Epner's testimony and that testimony is more than sufficient evidence to show that the plaintiffs' proposed crematorium stacks would not comply with the MASC for mercury." We agree with the department.

In part I of this opinion, we determined the proper interpretation of § 22a-174-29 of the regulations. We now turn to the department's application of that regulation to the facts in the present case. This appeal is brought pursuant to the Uniform Administrative Procedure Act (UAPA), General Statutes § 4-166 et seq. Judicial review of an administrative decision in an appeal under the UAPA is limited. See *Nussbaum* v. *Dept. of Energy & Environmental Protection*, 206 Conn. App. 734, 739, 261 A.3d 1182, cert. denied, 339 Conn. 915, 262 A.3d 134 (2021). "[R]eview of an administrative agency decision requires a court to determine whether there is substantial evidence in the administrative record to support the agency's findings of basic fact and whether the conclusions drawn from those facts are reasonable. . . . Neither [the appellate] court nor the trial court may retry the case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact. . . . Our ultimate duty is to determine, in view of all the evidence, whether the agency, in issuing its order, acted unreasonably, arbitrarily, illegally or in abuse of its discretion." (Internal quotation marks omitted.) Id.

"The substantial evidence rule governs judicial review of administrative fact-finding under the UAPA. . . . An administrative finding is supported by substantial evidence if the record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . The substantial evidence rule imposes an important limitation on the power of the courts to overturn a decision of an administrative agency . . . ." (Internal quotation marks omitted.) *Towing & Recovery Professionals of Connecticut, Inc.* v. *Dept. of Motor Vehicles*, 205 Conn. App. 368, 371, 257 A.3d 978, cert. denied, 338 Conn. 910, 258 A.3d 1279 (2021).

Our review of the record persuades us that the judgment of the court should be affirmed. In addressing the plaintiffs' claims on appeal, the court concluded that the commissioner's decision to deny the plaintiffs' applications for two new permits was not unreasonable, arbitrary, capricious, illegal or an abuse of discretion. The court observed that "this decision turns, not on the factual evidence submitted, but, instead, on the legal interpretation of the applicable regulations. Once the regulations are construed, their application to the evidence in this matter becomes uneventful." The court concluded that, "[i]f the regulations require a MASC analysis at the stack, the permits must be denied because *the uncontroverted record evidence revealed that the MASC for mercury vapor, as calculated and*

*entered into evidence by the intervening parties, was exceeded at the stack* and no emission exceeding the MASC can be allowed." (Emphasis added.) We agree with the court's analysis.

"[T]his court . . . may [not] retry [a] case or substitute its own judgment for that of the administrative agency on the weight of the evidence or questions of fact." (Internal quotation marks omitted.) *Towing & Recovery Professionals of Connecticut, Inc.* v. *Dept. of Motor Vehicles*, supra, 205 Conn. App. 375. The commissioner had the evidence of the bureau staff, as well as the testimony of Epner and the entire administrative record before him when making his final decision. This evidence included the MASC, performed by Epner, of mercury in its vapor form at the end of the stack. The data presented to the commissioner demonstrated that the concentration of mercury vapor at the discharge point would exceed the MASC for mercury. In light of the record and the considerable discretion concerning findings of fact afforded to the commissioner, we reject the plaintiffs' claim and conclude that the trial court properly interpreted the regulations and properly applied the facts in the present case.

### III

The plaintiffs next argue that the court erred by adjudicating issues not raised on appeal. Specifically, the plaintiffs contend that the court adjudicated three particular issues that were not raised on appeal: (1) whether the mercury emissions should be considered in deciding whether the proposed discharge meets the regulatory requirements for an air permit, (2) how § 22a-174-29 of the regulations regarding mercury emissions and the MASC should be applied, and (3) whether the plaintiffs failed to satisfy § 22a-174-29 because they did not calculate a MASC for mercury vapor as required by the regulation. The plaintiffs further contend that "[i]t is clear and unequivocal that the court ruled upon issues outside the scope of the pleadings, which is grounds for automatic reversal."

We begin our analysis with the standard of review. "Any argument that the court acted outside the scope of the pleadings implicates its authority to act, which presents a question of law over which our review is plenary. . . . Furthermore, [t]he interpretation of pleadings is always a question of law for the court . . . ." (Citation omitted; internal quotation marks omitted.) *Commerce Park Associates, LLC* v. *Robbins*, 193 Conn. App. 697, 732, 220 A.3d 86 (2019), cert. denied sub nom. *Robbins Eye Center, P.C.* v. *Commerce Park Associates, LLC*, 334 Conn. 912, 221 A.3d 447 (2020), and cert. denied sub nom. *Robbins Eye Center, P.C.* v. *Commerce Park Associates, LLC*, 334 Conn. 912, 221 A.3d 448 (2020).

In their appeal to the Superior Court, the plaintiffs

asked the court to vacate and reverse the department's final order denying their air permit applications. Specifically, the plaintiffs alleged, among other things, that, "[i]n denying the plaintiffs' applications the [department] acted arbitrarily, capriciously and illegally by requiring the plaintiffs [to] use the [hazard limiting value] for mercury vapor, rather than mercury particulate, in connection with the plaintiffs' MASC calculations for mercury emissions, in order to demonstrate [that] the proposed cremation systems comply with [§ 22a-174-29 of the regulations]. . . . [T]here are no facts contained in the record which could form a proper legal basis for the [department] to reach its conclusions that [§ 22a-174-29] require[s] the plaintiff[s] to demonstrate compliance with the MASC using the [hazard limiting value] for mercury vapor rather than mercury particulate . . . ."

The plaintiffs' contention that the court went beyond the pleadings is unfounded. The plaintiffs pleaded that the commissioner misinterpreted and misapplied § 22a-174-29 of the regulations; thus, it was clearly necessary for the court to consider the interpretation of that regulation, along with how it should be applied to the facts of the case at bar, in order to resolve the administrative appeal. The interpretation of § 22a-174-29 is clearly a legal question for the court to review, and, accordingly, the court was well within its discretion to adjudicate the appeal in the manner that it did.

IV

The plaintiffs' final claim on appeal is that the court erred by violating binding legal precedent and § 4-183 (j). Specifically, the plaintiffs contend that "[t]he trial court cannot substitute its judgment as to the credibility of witnesses or findings of fact so long as there is a rational basis for the factual findings in the record. . . . The trial court's decision . . . substitutes the court's own judgment in its place without regard to fundamental scientific and mathematical concepts." (Citations omitted.) The plaintiffs further contend that "[i]t is clear from the decision that the court fundamentally misunderstood all of the fundamental scientific and mathematical underpinning[s] central to this case." We disagree.

We previously concluded in parts I and II of this opinion that the court properly interpreted the regulations. This claim is another recitation of the arguments already addressed in this opinion. The court properly applied the substantial evidence standard in its review of the commissioner's decision. The plaintiffs claim that the court substituted its own judgment by "eschewing the expert opinions of every engineer that testified in this case"; however, that assertion is simply unsupported by the record.

Finally, the plaintiffs rely on *Godaire* v. *Dept. of*

*Social Services*, 174 Conn. App. 385, 165 A.3d 1257 (2017), in which this court reversed the trial court's ruling on the ground that the administrative decision was made upon unlawful procedure pursuant to § 4-183 (j) (3) because "the plaintiff did not have a meaningful opportunity to respond to the corrected evidence presented by the department . . . ." (Internal quotation marks omitted.) Id., 399. The plaintiffs assert that *Godaire* should inform our decision in the present case because the commissioner's decision was made upon unlawful procedure. Specifically, the plaintiffs contend that "[the department] submitted an unsworn document into the record, which was never scrutinized under cross-examination, and the gravamen of said document contradicts every representation made by the [department] in the preceeding two years . . . . [The letter was submitted] during a time period wherein the department['s rules of practice prohibit the admission of new evidence . . . ."

Contrary to the plaintiffs' assertion, the commissioner made clear that the response letter submitted by the bureau staff was not evidence. The commissioner stated in his ruling on the plaintiffs' objection and motion to strike the response letter that "[t]here is nothing in the language of the rule, nor [have] the applicant[s] provided any other authority to support [their] claim that [§] 22a-3a-6 (y) (3) (A) [of the regulations] or the related provision in [the UAPA] . . . prohibits [the] staff from filing, or me from considering, [the] staff's [proposed final decision] response. . . . The applicant[s'] motion sought to have [the] staff's [proposed final decision] response stricken from the evidentiary record. . . . However, [the] *staff's [proposed final decision] response is not evidence.* . . . Since it is not evidence, [the] staff's [proposed final decision] response will not be included in the evidentiary record in this matter." (Emphasis altered.) We agree with the commissioner. The response letter did not constitute evidence; rather, the document outlined the bureau staff's opinion and was properly included in the administrative record.[8] Nor do any of the department's regulations prohibit such a letter. In fact, the regulations explicitly provide for an opportunity to submit exceptions to the commissioner.[9] Moreover, the plaintiffs did respond to this letter through an objection. The commissioner considered and denied their objection, concluding that the bureau staff's response was properly filed and was not evidence, and that, as such, there was no requirement to afford the plaintiffs the opportunity to cross-examine the bureau staff.

In summary, the plaintiffs have failed to show that § 22a-174-29 of the regulations does not require a MASC calculation for mercury at the discharge point or that the commissioner's decision was not based on substantial evidence in the record.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] DiMaria is the sole member of Nutmeg State Crematorium, LLC. For efficiency, we collectively refer to both as the plaintiffs throughout this opinion.

[2] The other defendants in the underlying appeal to the Superior Court were Coles Brook Commerce Park Owners Association, Inc. (Coles Brook), Prime Locations of CT, LLC, Hasson Holdings, LLC, SMS Realty, LLC, C& G Holdings, LLC, and C&G Holdings II, LLC. Of those defendants, only Coles Brook is participating in this appeal. Coles Brook did not file its own brief but, rather, adopted the department's brief in full.

[3] General Statutes § 4-183 (j) provides in relevant part: "The court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; (2) in excess of the statutory authority of the agency; (3) made upon unlawful procedure; (4) affected by other error of law; (5) clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record; or (6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. If the court finds such prejudice, it shall sustain the appeal and, if appropriate, may render a judgment under subsection (k) of this section or remand the case for further proceedings. . . ."

[4] Section 22a-174-3a (a) (1) of the Regulations of Connecticut State Agencies provides in relevant part: "Prior to beginning actual construction of any stationary source or modification not otherwise exempted . . . the owner or operator shall apply for and obtain a permit to construct and operate under this section for any . . . (G) [i]ncinerator for which construction commenced on or after June 1, 2009 . . . ."

[5] The trial court made the following findings regarding mercury. "Mercury in various forms is a hazardous air pollutant . . . regulated under § 22a-174-29 of the Regulations of Connecticut State Agencies. There is evidence in the record that exposure to mercury can harm the brain, heart, kidneys, lungs, and immune system of people of all ages as well as cause death, reduced reproduction, slower growth and development, and abnormal behavior in animals. There is agreement amongst the parties that operation of the proposed cremation machines will emit mercury."

[6] Section 22a-174-29 (b) (2) of the Regulations of Connecticut State Agencies provides in relevant part: "No person, who is required to maintain compliance with a permit under section 22a-174-3a of the Regulations of Connecticut State Agencies shall cause or permit the emission of any hazardous air pollutant listed in Table 29-1, 29-2 or 29-3 of this section from any stationary source or modification at a *concentration at the discharge point* in excess of the maximum allowable stack concentration unless such source is in compliance with the provisions of subsection (d) (3) of this section. . . ." (Emphasis added.)

[7] Section 22a-3a-6 (y) (3) (A) of the Regulations of Connecticut State Agencies provides in relevant part: "[W]ithin [fifteen] days after personal delivery or mailing of the proposed final decision any party or intervenor may file with the Commissioner exceptions thereto. . . ."

[8] Section 22a-3a-6 (v) of the Regulations of Connecticut State Agencies provides in relevant part: "(1) . . . [F]or the purposes of a Department proceeding the record shall include: (A) any briefs or exceptions filed before or after issuance of the proposed final decision and (B) any correspondence between the hearing officer or Commissioner and any party, intervenor, or other person concerning the proceeding. (2) The evidentiary record shall be maintained separately from the rest of the record. The evidentiary record shall consist, in addition to the recording of the hearing, of all documents offered into evidence (exhibits), regardless whether they are admitted. Exhibits which are not admitted shall be marked for identification." (Internal quotation marks omitted.)

[9] Section 22a-3a-6 (y) (3) (A) of the Regulations of Connecticut State Agencies provides in relevant part: "Unless otherwise specified by the Commissioner, within [fifteen] days . . . of the proposed final decision any party . . . may file with the Commissioner exceptions thereto."